32 A.3d 243

COMMONWEALTH of Pennsylvania, Appellee

v.

Francis Bauer HARRIS, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 15, 2010.

Decided Nov. 23, 2011.

578

Matthew C. Lawry, Helen A. Marino, Defender Association of Philadelphia, Philadelphia, for Francis Bauer Harris.

Kelley Lynn Nelson, Christopher D. Carusone, Philadelphia, PA Office of Attorney General, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice McCAFFERY.

Appellant Francis Bauer Harris was found guilty by a jury of first-degree murder, and the Commonwealth sought the death penalty. During the penalty phase of his trial, Appellant sought to establish the statutory mitigating circumstance of extreme mental or emotional disturbance by presenting the testimony of a psychologist, Vincent Berger, Ph.D. *See* 42 Pa.C.S. § 9711(e)(2). The jury rejected Appellant's claim of a mitigating circumstance, found one aggravating circumstance, and returned a verdict of death.

After we affirmed Appellant's judgment of sentence, Appellant filed a petition under the Post Conviction Relief Act[1] ("PCRA") asserting that trial counsel had been ineffective for presenting Dr. Berger's testimony. Appellant claimed that trial counsel had presented Dr. Berger's testimony even though counsel was aware that Dr. Berger's evaluation of Appellant had been deficient because he had not tested him for organic brain damage. Appellant alleged that he suffers from a cognitive disorder, such as frontal lobe syndrome, that would have been identified by either appropriate testing or a psychiatrist's examination, and that evidence of the disorder would have mitigated his offense. He also alleged that Dr. Berger had not performed appropriate testing even though he recognized that Appellant's mental health history suggests that Appellant has such a cognitive disorder. To support these claims, Appellant proffered the testimony of other experts.

The court of common pleas scheduled a hearing on the PCRA petition, and, to defend against Appellant's allegations, the Commonwealth subpoenaed Dr. Berger to testify. The prosecution also asked Appellant to waive psychologist-client privilege with respect to Dr. Berger's testimony. When Appellant refused, the Commonwealth asked the PCRA court not only to declare the privilege waived, but also to permit it to hire Dr. Berger as its expert for the PCRA proceedings. The PCRA court granted the motion, and Appellant filed a notice of appeal to this Court. *Cf.* 42 Pa.C.S. § 9546(d) (providing this Court with exclusive jurisdiction over appeals from final PCRA orders in capital cases). We ordered briefing and oral argument on whether we have jurisdiction over this appeal as a collateral appeal under Pa.R.A.P. 313, and we now conclude that the exercise of jurisdiction is proper. On the merits, we hold that although the Commonwealth may subpoena Dr. Berger to testify as a fact witness, it may not hire him as its expert for the PCRA proceedings.

1. 42 Pa.C.S. § 9541–9546.

## I. Background

In November 1996, Appellant ambushed Daryl Martin, who was to testify against Appellant at his trial on aggravated assault charges. Appellant slashed Martin's throat, killing him. After Appellant was found guilty of first-degree murder, Dr. Berger testified during the penalty phase that Appellant had been born prematurely and was delivered using forceps. Dr. Berger said that after spending three months in the hospital, Appellant was placed in foster homes until he was a year and a half old, when he was placed with the family that later adopted him. Dr. Berger noted that Appellant's records showed that Appellant had delayed motor development and had displayed an emotional disturbance from an early age. He opined that Appellant's difficulties were characteristic of children who had been profoundly neglected at an early age, which he suggested might have happened to Appellant when he was in the hospital and then foster care. Notes of Testimony Penalty Phase, 10/8/97, at 4456–4458. Dr. Berger also opined that Appellant's emotional disturbance might have been the result of brain damage from having been delivered with forceps. *Id.* at 4463. Dr. Berger said that "nowadays ... we would probably do [ ] neuropsychological testing on him and run an MRI or whatever" to determine if behavior problems in a child born using forceps were caused by brain damage. *Id.* Nonetheless, he would not say that any of Appellant's adult behavior was related to brain damage, although he did testify that Appellant's delayed development "does suggest that there was something wrong at the time." *Id.*

Dr. Berger then gave a detailed mental health history of Appellant, describing what he termed a pattern of antisocial behavior persisting since childhood. Dr. Berger ultimately concluded that, to a reasonable degree of psychological certainty, Appellant has been severely emotionally disturbed, bordering on psychotic, since infancy. *Id.* at 4541–4542; 4545. He elaborated that although Appellant does not behave in an emotionally disturbed way at all times, when something in the environment triggers him, the emotional disturbance "comes

out." *Id.* at 4542. Dr. Berger noted that Appellant had been given slightly different diagnoses of mental illness throughout his life, but said that he had not diagnosed Appellant. *Id.* at 4544. He said that he did not do so because the purpose of a diagnosis is to give a shorthand explanation of a person's mental illness. He said that because he was going to testify at length about the behaviors demonstrating Appellant's disturbance, he had seen no reason to make a diagnosis. *Id.* at 4545. Dr. Berger opined that although Appellant knows right from wrong, his severe emotional disturbance might have in part caused him to overreact to the victim's behavior, be unable to control himself, and attack and kill the victim. *Id.* at 4548–4551.

On cross-examination, Dr. Berger agreed with the prosecutor that Appellant did not suffer from a brain abnormality that would have prevented him from conforming his behavior to the law. *Id.* at 4564. Dr. Berger also reiterated his opinion that researchers are learning that behavior is related to a "chemical imbalance" in the brain, and that "30 years from now, it could be that it would be clear that [Appellant] did or didn't have a particular brain problem that caused [his behavior]." *Id.* at 4625.

After the jury deliberated, it found as an aggravating circumstance the fact that Appellant had killed the victim to prevent him from testifying against Appellant. *See* 42 Pa.C.S. § 9711(d)(5). Finding no mitigating circumstances, the jury returned a verdict of death, and the trial court imposed the death sentence. Appellant filed post-verdict motions, which the trial court denied, and Appellant then filed a direct appeal to this Court. We affirmed, *Commonwealth v. Harris,* 572 Pa. 489, 817 A.2d 1033 (2002), and Appellant applied to the Supreme Court of the United States for a writ of *certiorari,* which that Court denied on December 8, 2003. *Harris v. Pennsylvania,* 540 U.S. 1081, 124 S.Ct. 939, 157 L.Ed.2d 756 (2003).

On November 22, 2004, Appellant filed a "Petition for Writ of Habeas Corpus and for Collateral Relief from Criminal Conviction Pursuant to the Post Conviction Relief Act"

("PCRA petition").[2] Among other claims, Appellant asserted that trial counsel had been ineffective for failing to investigate, develop, and present mitigating evidence that organic brain damage had contributed to Appellant's aggressive behavior. Appellant claimed that Dr. Berger's evaluation was inadequate because he had failed to form a diagnosis or conduct appropriate testing to determine whether Appellant suffered from brain damage, despite recognizing that some of Appellant's history was consistent with organic brain damage. PCRA Petition ¶ 358. Appellant also faulted Dr. Berger for allegedly not determining Appellant's mental state at the time of the offense, including whether Appellant suffered from an extreme mental or emotional disturbance at the time of the killing. *Id.* ¶ 345. Appellant claimed that counsel knew that Dr. Berger's performance was inadequate, and he faults trial counsel for failing to seek funds to hire a local or any other psychiatrist after the trial court had denied counsel's request to hire a particular psychiatrist from Texas. *Id.* ¶¶ 344, 347. Appellant also claimed that the trial court's orders denying counsel's requests for funds to hire an expert with appropriate knowledge and expertise violated his Eighth Amendment and due process rights. *Id.* ¶ 357.

The Commonwealth filed an answer to the amended PCRA petition, and the PCRA court scheduled a hearing on the petition. The Commonwealth moved to have Appellant evaluated by a mental health expert it had retained and for production of documents related to Appellant's mental health. The PCRA court granted the motion, and Appellant produced some records, but withheld others, asserting work product privilege. The Commonwealth then subpoenaed Dr. Berger to testify at the PCRA hearing, and sent a letter to Appellant's counsel asking Appellant to waive any privilege to information possessed by Dr. Berger. Appellant refused to waive privilege.

Dr. Berger responded to the subpoena to testify at the PCRA hearing by moving to quash it. He argued that

2. Appellant also filed so-called "supplements" to the PCRA petition, the allegations of which are not relevant to the issues before us.

releasing records or testifying could subject him to professional discipline and other repercussions under *Rost v. State Board of Psychology*, 659 A.2d 626 (Pa.Cmwlth.1995).[3] Dr. Berger asked the PCRA court to quash the subpoena, compel the parties to "release" all records and to permit him to testify, or to appoint him to "work under the protection of the court," as both sides were seeking his assistance. Motion to Quash Subpoena at 2. He also asked the court to determine who would pay for his time and to set "ground rules" for his participation. The PCRA court denied Dr. Berger's motion in its entirety.

The Commonwealth then asked the PCRA court to declare Appellant's claim of privilege waived. In the motion, the Commonwealth asserted that Dr. Berger was willing to work for the Commonwealth in defending against the PCRA petition but had requested a court order declaring the privilege waived. The Commonwealth also asserted in its motion that when Appellant's counsel had received the prosecutor's letter, they contacted Dr. Berger and advised him that they wished to retain his services again. Motion to Declare Doctor/Patient Privilege Waived, ¶ 17. The Commonwealth submitted with its motion a proposed order declaring the privilege waived and permitting the Commonwealth to "consult and enter into a contractual agreement with Dr. Berger."

Appellant responded that the Commonwealth's motion sought an unfair advantage, attempted to place Dr. Berger beyond his reach, and would "do an end run around" Appellant's assertion of attorney/client and work product privilege. Consolidated Answer in Opposition to Motion to Declare Doctor/Patient Privilege Waived at 5. Appellant also argued that permitting the Commonwealth to hire Dr. Berger as an expert would create a conflict of interest, as well as a conflict between Dr. Berger's role as the Commonwealth's expert and his ethical duty of confidentiality to Appellant. The PCRA court

3. In *Rost*, the Commonwealth Court held that a psychologist breaches his or her duty of confidentiality if he or she releases records pursuant to a subpoena without obtaining the client's consent, even if it has been determined that the client had waived the privilege by filing the lawsuit that had resulted in the subpoena.

granted the Commonwealth's motion and entered an order declaring Appellant's privilege waived and permitting the Commonwealth to hire Dr. Berger. Appellant filed a notice of appeal to this Court.

## II. Discussion

### A. Orders rejecting claims of privilege and requiring disclosures are immediately appealable.

We ordered briefing and oral argument on whether this Court should continue to permit immediate appeals from discovery orders that implicate privileged and confidential materials under our collateral order rule, Pa.R.A.P. 313. We did so in view of the United States Supreme Court's recent refusal to allow such appeals in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009).

With limited exceptions, Pennsylvania law permits only appeals from final orders. *See* Pa.R.A.P. 341 ("[A]n appeal may be taken as of right from any final order."). Final orders are those that dispose of all claims and all parties, are explicitly defined as final orders by statute, or are certified as final orders by the trial court or other reviewing body. *Id.; Rae v. Pa. Funeral Dirs. Ass'n*, 602 Pa. 65, 977 A.2d 1121, 1125 (2009). However, Pennsylvania Rule of Appellate Procedure 313(b) permits a party to take an immediate appeal as of right from an otherwise unappealable interlocutory order if the order meets three requirements: (1) the order must be separable from, and collateral to, the main cause of action; (2) the right involved must be too important to be denied review; and (3) the question presented must be such that if review is postponed until after final judgment, the claim will be irreparably lost. Pa.R.A.P. 313(b). All three prongs of Rule 313(b) must be met before an order may be subject to a collateral appeal; otherwise, the appellate court lacks jurisdiction over the appeal. *Rae, supra* at 1125.[4]

4. *See also Commonwealth v. Kennedy*, 583 Pa. 208, 876 A.2d 939, 943 (2005).

We applied Rule 313 in *Ben v. Schwartz*, 556 Pa. 475, 729 A.2d 547 (1999), and determined that orders overruling claims of privilege and requiring disclosures were immediately appealable. In that case, a plaintiff in a dental malpractice suit had subpoenaed the Bureau of Professional and Occupational Affairs to produce its investigative file for the dentist being sued. The Bureau moved to quash the subpoena, asserting that the material subpoenaed was subject to the governmental/executive privilege and a privilege under provisions of the Right–To–Know Law. The motion to quash was dismissed by the court of common pleas, and the Bureau filed an appeal to Commonwealth Court, which dismissed the appeal as interlocutory.

We granted review and determined that the order met the test for a collateral appeal. We noted that to qualify as a collateral order, the order must meet the three requirements of Rule 313(b) described above. *Ben, supra* at 550 (citing *Geniviva v. Frisk*, 555 Pa. 589, 725 A.2d 1209 (1999)). We explained that the order dismissing the motion to quash met the separability requirement because the privilege issues could be addressed without analyzing the allegations of dental malpractice. *Id.* at 552. We next determined that the importance prong was met because claims of privilege implicate rights rooted in public policy, and impact individuals other than those involved in the litigation. *Id.* Finally, we concluded that the Bureau, as the party subject to the disclosure order, would suffer irreparable loss if review were postponed because, once the investigative file was turned over, any privilege would be effectively destroyed because the disclosure could not be undone. *Id.*

Recently, in *Mohawk Industries, supra,* the United States Supreme Court reached the contrary result. In that case, the federal district court had ordered Mohawk Industries to disclose certain materials putatively protected by the attorney-client privilege on the ground that Mohawk Industries' actions in other litigation had waived the privilege. *Mohawk Industries,* 130 S.Ct. at 604. Mohawk Industries appealed, and the Eleventh Circuit dismissed the appeal on the ground that it

was from an interlocutory order not appealable under the federal collateral order doctrine. *Id.* The Supreme Court granted review and affirmed. It held that rulings adverse to the attorney-client privilege are not eligible for collateral order appeals because such orders are not effectively unreviewable after final judgment. *Id.* at 606. It stated that, even if a district court has improperly required disclosure of privileged material, a litigant can obtain sufficient relief after final judgment by having the court of appeals vacate the judgment and remand for a new trial at which the privileged materials are excluded from evidence. *Id.* at 606–07. The Court also noted other methods of obtaining interlocutory review for litigants in the federal system. It observed that a litigant subject to "a particularly injurious or novel privilege ruling" might obtain an interlocutory appeal by permission, or apply to the court of appeals for a writ of mandamus where the district court's privilege ruling " 'amounts to a judicial usurpation of power or a clear abuse of discretion,' or otherwise works a manifest injustice." *Id.* at 607 (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 390, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004)). Finally, the Court stated that a party could refuse to obey a discovery order and either appeal after judgment an order imposing discovery sanctions, or appeal any order imposing contempt sanctions for failing to follow the disclosure order, *Id.* at 608.

■ After reviewing *Mohawk Industries* and the briefs of the parties here, we are not convinced that we need to change course and overrule *Ben, supra.* We are particularly unconvinced that an appeal after final judgment is an adequate vehicle for vindicating a claim of privilege. Rather, we reaffirm our position in *Ben* that once material has been disclosed, any privilege is effectively destroyed. Privileges exist as a rule to promote frank discussions, and we respectfully disagree with the United States Supreme Court that disallowing immediate appeals will not chill such discussions. *See Gillard v. AIG Ins. Co.*, 15 A.3d 44, 57 (Pa.2011) (noting the broad range of protection afforded by the attorney-client privilege

and citing *Upjohn Co. v. United States,* 449 U.S. 383, 394–95, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

The free airing of concerns that privileges are intended to foster will be curtailed if parties are unable to speak without worrying that a confidant ordinarily subject to a privilege will one day be forced to repeat confidences. *See Lepley v. Lycoming Cty. Ct. of Com. Pl.,* 481 Pa. 565, 393 A.2d 306, 310 (1978) (stating purpose of work-product privilege). A rule requiring parties to wait until final judgment to appeal an order overruling a claim of privilege would both cause the privilege-holder's fears to be realized and deprive the privilege-holder of any meaningful remedy. Absent a stay and an immediate appeal, the possessor of putatively privileged material will repeat to others what the client told him or her in confidence, and, if it turns out that the claim of privilege was meritorious, a later appeal will not be able to undo the harm. Once putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal. *See Kennedy, supra* at 944 ("There is no effective means of reviewing[,] after a final judgment[,] an order requiring the production of putatively protected material." (quoting *Commonwealth v. Dennis,* 859 A.2d at 1270, 1278 (Pa.2004)) (holding that an order requiring a prosecutor to disclose his notes from voir dire, over a claim of work-product privilege, was immediately appealable under Rule 313) (alterations in *Kennedy* )).

In our view, the alternate methods for obtaining interlocutory review that the United States Supreme Court noted are either insufficient to preserve the vitality of privileges, or are not available in Pennsylvania law. The Court's first suggestion—that those subject to a ruling adverse to a claim of privilege might obtain an interlocutory appeal by permission—is not an adequate alternative. Pennsylvania law permits interlocutory appeals by permission, but under a somewhat different standard than the federal system. In Pennsylvania law, such an appeal may be had only if the party seeking the appeal clears two hurdles. First, the party must convince the trial court to certify in the order for which review is sought

that the order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of the matter. 42 Pa.C.S. § 702(b); *see also* Pa.R.A.P. 1311(b).[5] Second, if such a certification is obtained, the party must then convince the appellate court having jurisdiction over the appeal that it should exercise its discretion and permit an interlocutory appeal. *Id.*

These appeals by permission are an insufficient substitute for an immediate appeal as of right from orders overruling privileges. It is foreseeable that in some cases, the privilege claim wilt be thought insufficiently "controlling" or persuasive to justify an immediate appeal, or that an immediate appeal of what is ordinarily a discovery order will not hasten the end of the case. After all, privileges may be claimed for material that is not central to claims or defenses in the case, yet the litigant may be unwilling to relinquish the claim of privilege for any number of personal or other reasons. And even where the privilege issue is not "controlling," or where an immediate appeal will not materially advance the end of the case, the frank discussions that privileges are meant to protect will be chilled if the opportunity for immediate correction by an appellate court is not available.

As for seeking a writ of mandamus as a substitute for an immediate appeal, mandamus is generally not available in Pennsylvania law as a vehicle for obtaining appellate review. The Superior and Commonwealth Courts may issue writs of mandamus to lower courts only regarding matters ancillary to appeals already pending within those courts' respective juris-

5. If the trial court refuses to make such a certification, the litigant can obtain review of that decision by filing a petition for review in the appropriate appellate court. Pa.R.A.P. 1311, note. However, the availability of such review insufficiently protects the privilege for the same reasons that an interlocutory appeal by permission is also not an adequate substitute for a right of interlocutory appeal. The appellate court could easily agree—perhaps not incorrectly in some cases—that the issue was not "controlling" or that its resolution would not end the litigation sooner.

dictions. *See* 42 Pa.C.S. § 741; 42 Pa.C.S. § 761(c).[6] *See also Mun. Publications, Inc. v. Ct. of Com. Pl. of Phila. Cty.*, 507 Pa. 194, 489 A.2d 1286, 1288 (1985) (holding that the Superior Court may not issue writs of prohibition to review an order denying recusal before final judgment); *Bell Appeal*, 396 Pa. 592, 152 A.2d 731 (1959) ("No statute confers such powers upon the Superior Court except for the purely incidental right to issue a writ of mandamus or prohibition to a court of inferior jurisdiction ancillary to proceedings pending in the Superior Court under its appellate jurisdiction...."). Although this Court may assume plenary jurisdiction over any case pending in a Pennsylvania court, and in such a case may issue a writ of mandamus, we may assume such jurisdiction only where the matter "involve[es] an issue of immediate public importance...." 42 Pa.C.S. § 726. However, the requisite degree of public importance is lacking in most orders overruling privileges, even though such an order may have a profound effect on the party holding the privilege. In short, because of the extremely limited availability of mandamus as a method of obtaining appellate review in Pennsylvania, we believe it offers insufficient protection of privileges to be a satisfactory alternative to a collateral order appeal.

Finally, the option of disobeying a disclosure order and being thus subject to discovery or contempt sanctions as a way of obtaining review is so extreme as to be no option at all. That method would require parties to expose themselves to the full range of sanctions from fines to imprisonment. Such potentially severe ramifications are too likely to coerce parties unfairly into abandoning meritorious claims of privilege to adequately serve the ultimate aim of any privilege—unfettered disclosures in particular circumstances. In summary, we reaffirm our holding in *Ben, supra*, that orders overruling claims

---

6. *See* 42 Pa.C.S. § 741 ("The Superior Court shall have no original jurisdiction, except in cases of mandamus and prohibition to courts of inferior jurisdiction where such relief is ancillary to matters within its appellate jurisdiction...."); 42 Pa.C.S. § 761(c) ("The Commonwealth Court shall have original jurisdiction in cases of mandamus and prohibition to courts of inferior jurisdiction and other government units where such relief is ancillary to matters within its appellate jurisdiction....").

of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313. We now turn to the merits of this appeal.

### B. The prosecution may not hire a psychologist who previously testified as an expert for the defense in the same case.

We now address the substantive question before us: May the prosecution retain for PCRA proceedings an expert whom the defense had previously retained during trial? Appellant argues that the prosecution should not be permitted to retain Dr. Berger because Appellant has not waived the psychologist-client privilege. Appellant asserts that he did not forfeit his privilege by putting material subject to the privilege at issue in his PCRA petition, because he has not claimed that Dr. Berger was ineffective. Rather, Appellant contends he has asserted trial counsel's ineffectiveness for failing to investigate or present adequately mitigating factors, including the possibility that Appellant suffers from organic brain damage. He further argues that even if his actions did work to waive the privilege, any waiver is limited to material relevant to his ineffectiveness claim, and asserts that the PCRA court thus erred by declaring the privilege waived as to all matters. According to Appellant, the prosecution should not be allowed to retain Dr. Berger because Dr. Berger will thereby be subject to an impermissible conflict between his ethical duty of confidentiality to Appellant and his duties to the prosecution, exposing Dr. Berger to professional discipline under *Rost*, *supra*. Appellant asserts that to allow the Commonwealth to hire Dr. Berger would risk Dr. Berger's revealing to the prosecution material as to which the attorney-client and attorney work product privileges have not been waived. He argues that Dr. Berger should instead be limited to testifying as a fact witness about matters not subject to any privilege.

The Commonwealth responds that Appellant waived the psychologist-client privilege [7] both by challenging Dr. Berger's

7. Appellant notes that the Commonwealth argued in the PCRA court that Appellant waived "doctor-patient" privilege by challenging Dr.

performance in his PCRA petition and by having Dr. Berger testify during the penalty phase about Appellant's confidential communications to Dr. Berger. The Commonwealth adds that Appellant's concerns about Dr. Berger's ethical obligations are misplaced because Dr. Berger satisfied his ethical duties by obtaining a court order enforcing the subpoena and declaring the psychologist-client privilege waived.

We conclude that the lower court correctly determined that, by challenging Dr. Berger's and trial counsel's performances, Appellant waived any privilege to material necessary for the prosecution to refute those challenges. However, we further conclude that the PCRA court erred by allowing the prosecution to retain Dr. Berger. To permit the prosecution to do so would not only risk disclosure of material to which Appellant has not waived privilege, but also would erode public confidence in the integrity of criminal proceedings. Nonetheless, as explained below, the prosecution may require Dr. Berger to appear and testify as a fact witness.

Although we have never explicitly stated a standard for disqualifying an expert due to a conflict of interest, we did consider the issue in *Kennedy, supra.* In that case, a criminal defendant had obtained independent DNA testing of physical evidence, but decided not to present the evidently unfavorable results at trial. When the prosecution subpoenaed the person who had conducted the tests to testify, the defendant moved to quash the subpoena, but the trial court denied the motion. On appeal to this Court, we determined that the work-product privilege barred the prosecution from presenting the testimony. We refused to allow the prosecution to present the

Berger's performance. Appellant claims that, in so doing, the Commonwealth itself waived any argument that he waived *psychologist-client* privilege. We disagree. The Commonwealth's mislabeling of the applicable privilege led no one to focus on the wrong issue. Although it used the wording of the Commonwealth's proposed order, which likewise referred to the "doctor-patient" privilege, the PCRA court evidently understood that it was the psychologist-client privilege that was in issue, as it discussed the correct privilege in its Pa.R.A.P. 1925(a) opinion. Appellant likewise was not confused. He raised the question of the Commonwealth's alleged waiver for the first time in his Reply Brief in this Court, evidently not having noticed the mistake earlier.

expert's testimony because the defense had reasonably expected discussions with, and investigations by, the expert to remain confidential, and the public interest behind the privilege would be undermined by overriding the privilege. *See also Commonwealth v. Noll,* 443 Pa.Super. 602, 662 A.2d 1123 (1995) (holding that the prosecution could not retain as a testifying expert for trial a non-testifying expert the defendant had previously retained).

Consistent with *Kennedy*, we conclude here that the PCRA court abused its discretion by permitting the prosecution to retain and consult with Dr. Berger because Dr. Berger may well be in possession of material that remains subject to privilege, and the public interest will best be served by sustaining the remaining privilege. Of course, this case differs from *Kennedy* in that here, the expert, Dr. Berger, has already testified on Petitioner's behalf, and Petitioner has waived privilege to the extent he placed Dr. Berger's and trial counsel's performances in issue. Although any privilege is waived to the extent the holder of the privilege puts the privileged material in issue, we cannot allow the prosecution to retain Dr. Berger as its expert because it is entirely possible that Dr. Berger possesses material that Appellant has not placed in issue. In-issue waiver occurs when the privilege-holder asserts a claim or defense, and attempts to prove that claim or defense by reference to the otherwise privileged material. *See Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851, 863 (3d Cir.1994).

Here, Appellant has explicitly stated that Dr. Berger was privy to confidential communications between Appellant and trial counsel. *See* Appellant's Brief at 17–18. The prosecution does not dispute that assertion. Because Dr. Berger was privy to such confidential attorney-client communications, many of which may have no bearing on Appellant's PCRA claims, he may well be in possession of privileged material that Appellant has not placed in issue. *See Noll, supra* at 1126 (extending work-product and attorney-client privileges to counsel's agents). Allowing the prosecution to retain and consult with Dr. Berger creates the potential that still-privi-

leged material will be revealed, perhaps inadvertently, and moreover, risks the public perception, whether justifiable or not, that a witness in a criminal matter changed his view in exchange for remuneration. We also think it significant that barring the prosecution from retaining Dr. Berger will occasion the prosecution no prejudice. It may still subpoena him to testify as a fact witness, to the extent any privilege has been waived, without further remuneration. Of course, it will be for the PCRA court to determine on remand precisely what portions, if any, of Dr. Berger's testimony are still privileged.

Appellant's argument that he did not place Dr. Berger's performance in issue is unconvincing, as two of his claims in his PCRA petition hinge on an allegation that Dr. Berger's performance was inadequate. Appellant has claimed that Dr. Berger's evaluation was inadequate, although not in so many words, and that trial counsel were ineffective for knowing it but failing to obtain a proper evaluation. PCRA Petition ¶¶ 347, 348. The allegation that trial counsel "became aware of the inadequacies of Dr. Berger's evaluation" presupposes that his performance was inadequate. *Id.* ¶ 346. Appellant has also claimed that the trial court's orders denying counsel's requests for funds to hire an expert with appropriate knowledge and expertise violated his Eighth Amendment and due process rights. *Id.* ¶ 357. Both of these claims implicate the adequacy of Dr. Berger's evaluation of Appellant: if Dr. Berger's performance was, in fact, adequate, then neither claim can succeed. Appellant has therefore placed both Dr. Berger's evaluation and trial counsel's effectiveness in issue, and in so doing, he has waived the attorney-client, psychologist-client, and work-product privileges to the extent he has placed putatively privileged material in issue.

Appellant's concern that requiring Dr. Berger to testify will violate his ethical obligations under *Rost, supra,* is misplaced. Even under *Rost,* a psychologist will properly be found in violation of his or her professional duties only if he or she "unilaterally" releases a client's records in response to a subpoena, without "seek[ing] the consent of her client, professional legal advice, or the imprimatur of a judge." *Rost,* 659

A.2d at 629. For purposes of the issues before us, we assume, without deciding, that that statement is correct. Because we have determined that Dr. Berger may be called to testify as a fact witness to the extent Appellant has waived any applicable privileges, Dr. Berger cannot, consistent with *Rost*, be found to be in violation of his ethical duties.

## III. Conclusion

We conclude that the order of the court of common pleas declaring Appellant's privilege regarding Dr. Berger waived and permitting the prosecution to consult with and retain Dr. Berger is immediately appealable as of right. On the merits, we hold that the prosecution may require Dr. Berger to testify as a fact witness about his evaluation of Appellant insofar as Appellant has waived any privilege by his actions. The trial court shall determine the extent of the waiver on remand. However, the prosecution may not consult with or retain Dr. Berger as an expert. Jurisdiction relinquished.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, and ORIE MELVIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I join the majority opinion, subject to the following comments.

On the jurisdictional question, I previously expressed my own preference that discovery orders requiring production of assertedly privileged material generally should follow the permissive appeals route. *See Commonwealth v. Kennedy*, 583 Pa. 208, 231–32, 876 A.2d 939, 953–54 (2005) (Saylor, J., concurring).[1] Nevertheless, I supported the application of the

1. The majority makes a valid observation that the requirements of Rule of Appellate Procedure 1311 may be too stringent as applied to privilege matters. *See* Majority Opinion at 588, 32 A.3d at 250. I note only that, as the rulemaker, this Court does have the ability to tailor the applicable rules in light of the stated concerns, as an alternative to maintaining the present categorical approach. *See generally* John C. Nagel, *Replacing the Crazy Quilt of Interlocutory Appeals Jurisprudence*

collateral order doctrine based on Pennsylvania precedent. *See id.* (citing *Commonwealth v. Dennis,* 580 Pa. 95, 107–09, 859 A.2d 1270, 1278 (2004)). Nothing said in *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100, 130 S.Ct. 599, 175 L.Ed.2d 458 (2009), alters my calculus in this latter regard, albeit that our collateral order jurisprudence otherwise is fashioned after the federal model.

As to the merits, I support the majority's primary logic, but have some difficulty with a few of the collateral comments. For example, the majority's effort to address the ethical concerns expressed by Dr. Berger, *see* Majority Opinion at 593–94, 32 A.3d at 253–54, while perhaps salutary, do not solve his dilemma, in the absence of a determination of exactly what matters and materials fall within the scope of an extant privilege.[2] The majority's comment that Dr. Berger must appear "without further remuneration," *id.* at 593, 32 A.3d at 253, seems to me to go to the psychologist's motion to the PCRA court, *see id.* at 582–83, 32 A.3d at 246–47, which I see as beyond the scope of the present appeal proceedings.

*with Discretionary Review,* 44 Duke L.J. 200, 216 (1994) ("A broad discretionary exception [to the final judgment rule] avoids the difficult, perhaps intractable, problem of defining in advance all the categories of orders that should be appealable before final decision."); Robert J. Martineau, *Defining Finality and Appealability by Court Rule: Right Problem, Wrong Solution,* 54 U. Pitt. L.Rev. 717, 777 (1993) ("The discretionary appeal thus provides the relief valve in those cases in which the strict adherence to the final judgment rule would not serve the best interests of the parties or the public, but with an individualized balancing of interests made on a case by case basis.").

**2.** For my own part, I believe the waiver to be very broad, since Dr. Berger was not a treating psychologist, but rather, was retained as a defense expert for trial purposes. *See* PCRA Petition at ¶ 343. Thus, it seems to me that the wider range of his observations and opinions should be subject to the waiver, given that Appellant has placed his performance as a defense expert in issue.