J-S33004-22

2023 PA Super 9

| | | |
|---|---|---|
| MARY KATHLEEN SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THERESE T. O'BRIEN, INDIVIDUALLY | : | |
| AND AS ADMINISTRATRIX OF THE | : | |
| ESTATE OF WILLIAM P. O'BRIEN, III, | : | |
| DECEASED | : | |
| | : | |
| APPEAL OF: THERESE T. O'BRIEN, | : | |
| AS ADMINISTRATRIX OF THE ESTATE | : | |
| OF WILLIAM P. O'BRIEN, III, | : | |
| DECEASED | : | No. 837 EDA 2022 |

Appeal from the Order Entered January 31, 2022,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s): 2020-18361.

| | | |
|---|---|---|
| MARY KATHLEEN SMITH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| THERESE T. O'BRIEN, INDIVIDUALLY | : | |
| AND AS ADMINISTRATRIX OF THE | : | |
| ESTATE OF WILLIAM P. O'BRIEN, III, | : | |
| DECEASED | : | |
| | : | |
| APPEAL OF: THERESE T. O'BRIEN, | : | |
| INDIVIDUALLY | : | No. 838 EDA 2022 |

Appeal from the Order Entered January 31, 2022,
in the Court of Common Pleas of Montgomery County,
Civil Division at No(s): 2020-18361.

BEFORE: KUNSELMAN, J., KING, J., and SULLIVAN, J.

OPINION BY KUNSELMAN, J.: **FILED JANUARY 19, 2023**

Therese T. O'Brien, individually and as administratrix of her husband

William O'Brien's estate, appeals from the order directing her to divulge a

conversation she and Mr. O'Brien had shortly before his death. The trial court rejected Mrs. O'Brien's assertion of spousal-communication privilege.[1] While the spousal-communication privilege survives a marriage, the basis for entertaining an immediate appeal from an order compelling disclosure of spousal communications does not. Thus, we quash these consolidated appeals as interlocutory.

According to Ms. Smith's complaint, when she was between the ages of five and eleven, Mr. O'Brien sexually assaulted her on multiple occasions while she visited the O'Brien home. Mrs. O'Brien was present during those visits.

Ms. Smith eventually told her parents, who called the police. They came to the home, questioned Mr. O'Brien about the sexual-assault allegations, but did not arrest him. Once law enforcement departed, Mr. O'Brien told his wife "why he was speaking to the police." Trial Court Opinion, 4/14/22, at 2 (citing Depo. of Mrs. O'Brien at 11:15-17, 22-25). He then got in his car and drove off. A few hours later, Mr. O'Brien died in a train crash.

Upon becoming an adult, Ms. Smith sued Mrs. O'Brien and Mr. O'Brien's estate for battery, negligence, and intentional infliction of emotional distress. In discovery, Mrs. O'Brien sat for a deposition. As mentioned, she objected to questions concerning her conversation with her husband based on spousal-

---

[1] The statute provides, "in a civil matter, neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial." 42 Pa.C.S.A. § 5923.

communication privilege. Ms. Smith moved to compel her testimony, and the trial court granted the motion. These appeals followed.

After reviewing the record, we questioned our appellate jurisdiction over the appealed-from order directing discovery. "Neither party has raised this issue; however, it is well-settled that this Court may raise the issue of our jurisdiction *sua sponte.*" **Funk v. Empfield**, 281 A.3d 315, 317 (Pa. Super. 2022).

Therefore, we issued a rule to show cause regarding why we should not quash these appeals due to a lack of appellate jurisdiction. Specifically, we asked "whether the underlying goal of [spousal] privilege is promoted by allowing collateral appeals after a marriage has ended." Rule to Show Cause, 11/2/22, at 2. Mrs. O'Brien responded to our order by filing a supplemental brief.

She argues the discovery order is an immediately appealable, collateral order, because it implicates a right that is too important to be denied review. Mrs. O'Brien further asserts that **Commonwealth v. Harris**, 32 A.3d 243 (Pa. 2011), controls the question of our appellate jurisdiction. Because spousal-communication privilege survives the marriage, Mrs. O'Brien believes "that immediate judicial review to prevent disclosure of spousal communications . . . is not dependent upon whether a spouse is dead or alive or a marriage intact or terminated." O'Brien's Supplemental Brief at 8. Hence, her argument focuses on the statutory privilege itself, rather than its purpose (*i.e.,* protecting martial harmony). In our show-cause order, we explicitly directed

- 3 -

Mrs. O'Brien to discuss the latter nuance. We find her supplemental brief unpersuasive.

"Jurisdiction is purely a question of law; the appellate standard of review is *de novo*, and the scope of review plenary." ***Kapcsos v. Benshoff***, 194 A.3d 139, 141 (Pa. Super. 2018) (*en banc*).

Pennsylvania courts have long held that "an appeal will lie only from a final order unless otherwise permitted by statute." ***Pugar v. Greco***, 394 A.2d 542, 544 (Pa. 1978). "A final order is one which usually ends the litigation, or alternatively, disposes of the entire case." ***Id.*** at 544–45; ***see also*** Pa.R.A.P. 341(b). Here, the appealed-from order is not final. It directs further discovery, rather than end the litigation.

Even so, an immediate appeal will lie from a collateral order. "An appeal may be taken as of right from a collateral order of a trial court . . . ." Pa.R.A.P. 313(a).

A collateral order is "an order [(1)] separable from and collateral to the main cause of action [(2)] where the right involved is too important to be denied review and [(3)] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). If an order satisfies the three-pronged test set forth in Rule 313(b), this Court may exercise appellate jurisdiction over the order, even though it is not final. ***See***, ***Rae v. Pennsylvania Funeral Directors Ass'n***, 977 A.2d 1121, 1125 (Pa. 2009).

The collateral-order rule is "a specialized, practical application of the general rule that only final orders are appealable as of right." ***Spanier v. Freeh***, 95 A.3d 342, 345 (Pa. Super. 2014). "As such, this Court must stringently apply the requirements of the collateral-order doctrine." ***Id.*** If an order does not meet "all three prongs of the collateral-order test, this Court has no jurisdiction to consider an appeal" from that order. ***Id.***

In ***CAP Glass, Inc. v. Coffman***, 130 A.3d 783 (Pa. Super. 2016), this Court reviewed the appealability of an order directing a husband to testify against his wife, who was a co-defendant. There, CAP Glass, Inc. challenged appellate jurisdiction based on the first prong. This Court discussed that prong at length and found the issue on appeal to be collateral to the main cause of action.

In this case, Ms. Smith's causes of action are battery, negligence, and intentional infliction of emotional distress. These matters are distinct and separable from the issue of whether Mr. O'Brien's conversation with his wife falls within the statutory privilege afforded to martial communications. Thus, the appealed-from order satisfies the first prong of the collateral-order test.

Regarding the second and third prongs, the ***CAP Glass*** Court said, the "privilege protecting confidential marital communications, with its ***underlying goal of protecting and promoting marital harmony***, obviously qualifies" as a right that is too important to be denied review. ***Id.*** at 790 (emphasis added). "In addition, a disclosure of confidential, marital communications

cannot be undone, and therefore the asserted right will be irreparably lost if we defer review." *Id.*

Here, unlike in **CAP Glass**, husband is dead. Therefore, the statutory privilege's purpose of protecting and promoting the O'Briens' marriage from the discord that might arise after disclosing private conversations is absent. Accordingly, once a marriage ends, the spousal-communication privilege is greatly reduced in importance. Simply put, 42 Pa.C.S.A. § 5923 cannot protect or promote the marital harmony of a nonexistent marriage. With no marriage to promote or protect, the statutory privilege carries no more weight in the collateral-order analysis than any other rule of evidence.

The only tangible interest Mrs. O'Brien has in keeping her discussion with her husband private is defending this litigation. She cannot possibly claim that this appeal is protecting or promoting their former marriage, nor does she. *See* O'Brien's Supplemental Brief at 8-10. Therefore, Mrs. O'Brien's interest in appealing the discovery order is no different from any party seeking to keep relevant, inculpatory evidence out of court. That interest – common to all civil defendants – does not constitute a right too important to be denied immediate review under Pa.R.A.P. 313(b).

If a jury returns a verdict against her, Mrs. O'Brien may appeal from the final judgment like any other defendant. Then, if we determine that disclosure of the marital communication was an abuse of discretion and that the error was harmful to Mrs. O'Brien's case, we can easily remedy that ordinary harm by vacating the judgment, awarding a new trial, and excluding the evidence.

Hence, whatever harm the trial court's discovery order may ultimately inflict upon Mrs. O'Brien's defense is not irreparable.

Finally, Mrs. O'Brien's reliance on **Harris**, **supra**, is misplaced. **Harris** involved a layperson-professional privilege in a death-penalty case under the Post-Conviction Relief Act.[2] The Commonwealth sought to call the defendant's psychologist as an expert witness against him, and the PCRA Court granted the motion. The defendant immediately appealed. Reaffirming the general rule that orders compelling disclosure of privileged communications are collateral, the Supreme Court of Pennsylvania focused on the purpose of the layperson-professional privileges.

Those "privileges exist to promote frank discussions" between professionals and their patients/clients/parishioners. **Harris**, 32 A.3d at 249. Not permitting an immediate appeal might "chill such discussions." **Id.** Of particular concern for the **Harris** Court was the reliance that laypersons put in learned professionals when discussing private matters. As the Supreme Court explained, without "an immediate appeal, the possessor of putatively privileged material will repeat to others what **the client** told him or her in confidence, and, if it turns out that the claim of privilege was meritorious, a later appeal will not be able to undo the harm." **Id.** (emphasis added).

Here, by contrast, the spousal-communication privilege does not involve the protection of clients' interests or professionals' need for frank discussions.

---

[2] **See** 42 Pa.C.S.A. §§ 9541-9546.

Moreover, the spousal-communication privilege does not arise from a layperson-professional relationship or the confidentiality upon which such professional relationships are built. Instead, spousal privilege promotes and protects a couple's marriage from discord that disclosing communications might produce. Therefore, the goal of the spousal privilege differs greatly from the goal of the layperson-professional privileges that influenced the **Harris** decision. Moreover, the **Harris** Court never considered the spousal privilege. Hence, the holding of **Harris** is limited to its facts and specifically the layperson-professional privileges that it reviewed.

In sum, after a marriage ends, an order directing disclosure of a marital communication is not collateral. If privileged, marital communications are improperly disclosed in court, no harm or discord can befall a marriage that no longer exists. Because the O'Brien marriage has ended, the discovery order before us does not satisfy the second and third prongs of the collateral-order doctrine. **See** Pa.R.A.P. 313(b).

As such, we lack appellate jurisdiction. **See Spanier**, **supra**.

Appeals quashed.
*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 1/19/2023*

- 8 -