2018 PA Super 157

| | | |
|---|---|---|
| DEBORAH MCILMAIL, ADMINISTRATRIX OF THE ESTATE OF SEAN PATRICK MCILMAIL | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| ARCHDIOCESE OF PHILADELPHIA, MONSIGNOR WILLIAM LYNN, AND FR. ROBERT BRENNAN | : : : : : : : | No. 1009 EDA 2017 |
| APPEAL OF: THE ARCHDIOCESE OF PHILADELPHIA | : : | |

Appeal from the Order Entered February 22, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2013, No. 01114

BEFORE: PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

OPINION BY PANELLA, J.                    **FILED JUNE 07, 2018**

In this case we are asked to resolve two issues: (1) are notes and memoranda of witness interviews by a private investigator, acting at the express direction of defense counsel, protected by the work-product doctrine, as defined in Pennsylvania Rule of Civil Procedure No. 4003.3, to the same extent as if the interviews were conducted by counsel, and (2) whether the defense should be estopped from relying upon the work-product doctrine because it pursued disclosure of the identical materials from the claimant's attorneys.

_____

* Former Justice specially assigned to the Superior Court.

As indicated above, the discovery under review involves notes from witness interviews conducted by a private investigator hired by defense counsel. The trial court ruled that the witness interviews were discoverable under Rule 4003.3, but that the work-product doctrine applied in a limited fashion. Because the interviews were not conducted by an attorney, only the "impressions or evaluations" of the investigator were barred from production, unlike the broader protection the doctrine grants to attorneys under Rule 4003.3. Additionally, the trial court, in a strongly worded opinion, held that the defense was estopped from challenging the disclosure of the materials in issue in light of its conduct during the discovery phase of the litigation.

BACKGROUND

Factual History

The plaintiff, Deborah McIlmail, Administratrix of the Estate of Sean Patrick McIlmail, filed this action in November 2013 against the Archdiocese of Philadelphia, Monsignor William Lynn and Father Robert Brennan. Deborah McIlmail is the mother of the decedent, and alleged that Father Brennan engaged in a course of sexual abuse of the decedent, while Sean was a minor, starting in 1998.

In relation to the causes of action against Monsignor Lynn and the Archdiocese, the plaintiff alleges that they engaged in a course of concealment after learning of Brennan's abusive conduct. The result of their actions was that Brennan continued to have unsupervised access to Sean during which

time additional episodes of sexual abuse were perpetrated.  The plaintiff also contends that Brennan was an employee and agent of the Archdiocese.

Witness Statements and Subpoena

During the discovery stage of the case, the trial court appointed former Justice Russell Nigro to meet with counsel and resolve certain discovery disputes.  An issue concerning interviews of witnesses had been raised by the parties and was addressed at a discovery conference held on September 9, 2016.

Counsel for the Archdiocese had retained Auld & Associates, a private investigator firm, to conduct interviews with potential witnesses identified by the Archdiocese's attorneys. Counsel for the plaintiff sought discovery of the investigator's notes and summaries of the witness interviews.

At an earlier stage of discovery, Plaintiff sent a Notice of Intent to Subpoena the files of the defense investigator, Auld and Associates. The proposed subpoena sought documents in Auld's files including:

1. Interview notes;
2. Written reports, whether received or prepared by Auld;
3. Written witness statements, including drafts;
4. Photographs or video recordings of the witnesses;
5. Intra-office memoranda and analyses;
6. Lists of individuals contacted and/or interviewed; and
7. Any correspondence from Auld regarding the McIlmail case.

Justice Nigro reviewed Rule 4003.3, and determined that witness statements obtained by either side of the litigation were discoverable, but that any impressions about the statements by the interviewer or communications

between the interviewer and counsel were not discoverable. The term "statement" was limited to statements of fact elicited from the witnesses by the interviewer, not any impressions of the witnesses. Justice Nigro based his decision on the concluding sentences of Rule 4003.3:

> The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the **representative of a party other than the party's attorney**, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

(emphasis added).

In the event that Justice Nigro's decision was not acceptable, the parties were given an opportunity to object and seek review from the trial court. No objection was raised by either side. The parties then exchanged similar discovery requests on this basis. First, defense counsel served on plaintiff discovery requests seeking information obtained from witnesses interviewed by the plaintiff's counsel and their investigators. A few days later, plaintiff sent an identical set of discovery requests back to the Archdiocese, seeking the notes of interviews from witnesses questioned by the Archdiocese's investigator.

Plaintiff's counsel provided to the defense the identity of putative witnesses that the plaintiff's investigator had located but not yet interviewed. In what was seemingly a surprise to everyone else, the defense then objected to plaintiff's request for the statements of the witnesses questioned by Auld.

Although counsel for the Archdiocese identified Auld as its investigator, and stated that it had directed Auld to interview certain witnesses, it refused to provide any information obtained from these witnesses.

Plaintiff then moved to compel the disclosure of the notes taken from Auld's interviews with the witnesses. On February 22, 2017, the trial court entered an order that overruled the defense objection and granted the plaintiff's motion to compel production of the witness statements.

Trial Court's Decision

The trial court first found that the Archdiocese should be estopped from contesting the decision made by the discovery master on September 9, 2016. At that conference, Justice Nigro announced his decision to permit limited discovery of the parties' respective investigator's notes and files. Although Justice Nigro instructed counsel to notify him within a week if they intended to contest that decision, neither side took any action. Instead, the parties sent each other similar discovery requests for the notes of the witness interviews.

The trial court found that the plaintiff, relying upon the defense's inaction in raising any objection, responded to the defendant's request for the information about the potential witnesses. After receiving plaintiff's response, the Archdiocese raised its objection for the first time. The trial court found that estoppel was necessary to ensure "fundamental fairness" in light of the inducement and inconsistent positions adopted by the Archdiocese.

On the merits of the issue, the trial court found that the work-product doctrine, pursuant to Rule 4003.3, applied. But rather than the broader protection granted to materials prepared and compiled by an attorney, the trial court found that the doctrine was limited to the later clause of Rule 4003.3 because Auld was a "representative of a party" and not an attorney. Therefore, the memoranda, notes or summaries of the interviews were discoverable. This appeal followed.

DISCUSSION

Initially, we must make an independent determination as to whether the Order of February 21, 2017, is appealable as a collateral order. Rule 313 of our Rules of Appellate Procedure, promulgated in 1992, solidified and codified the appealability of collateral orders. The rule provides:

> **(a) General rule.** An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
> **(b) Definition.** A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

"The [collateral order] doctrine is to be construed narrowly to preserve the integrity of the general rule that only final orders may be appealed; thus, the requirements for a collateral order are applied relatively stringently." **In re Estate of Stricker**, 977 A.2d 1115, 1119 (Pa. 2009), *superseded by statute as stated in* **In re Estate of Plance**, 175 A.3d 249 (Pa. 2017).

Generally, discovery orders are deemed interlocutory and not immediately appealable, because they do not dispose of the litigation. On the other hand, discovery orders requiring disclosure of privileged materials generally are appealable under Rule 313 where the issue of privilege is separable from the underlying issue. This is because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot. *See Rhodes v. USAA Cas. Ins. Co.,* 21 A.3d 1253, 1258 (Pa. Super. 2011); *Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866, 870 (Pa. Super. 2002) ("[T]here is no question that if the documents which have been disclosed are in turn disseminated ... appellate review of the issue will be moot because such dissemination cannot be undone.")

We must review the trial court's decision on an issue-by-issue basis and every one of the Rule's three prongs must be satisfied before collateral appellate review is permitted. *See Rae v. Pennsylvania Funeral Directors Association*, 977 A.2d 1121, 1130 (Pa. 2009).

In *Ben v. Schwartz*, 729 A.2d 547 (Pa. 1999), our Supreme Court determined that an appeal from an order compelling the production of an investigative file of the defendant dentist in a malpractice action, under the control of the Bureau of Professional and Occupational Affairs, and which the Bureau claimed was privileged, was an appealable collateral order under Rule 313. The Court considered three prongs in its analysis: 1) whether the order

was separable from the main cause of action, 2) whether the right involved was too important to be denied review, and 3) whether the claim would be irreparably lost should review be denied. **See id**. at 481.

It is not difficult to conclude that the order in question here is separable from the main cause of action. The issue presented to us is whether the accounts of the witness interviews are discoverable, which may lead to evidentiary issues at trial. This decision will have a bearing upon the ultimate issue of liability but is clearly separable from it because it can be addressed without an analysis of the merits of the underlying cause of action. Furthermore, the appellate review granted in **Ben v. Schwartz** has historically been restricted to discovery orders granting disclosure of arguably privileged information, and not to orders denying disclosure of the disputed material. We, therefore, conclude that the issue is separable for purposes of determining whether the order is collateral under Rule 313.

As to the issue of importance, an issue falls under Rule 313 if the issue implicates rights deeply rooted in public policy and impacts individuals other than those involved in the litigation of that case. "For purposes of defining an order as a collateral order under Rule 313, it is not sufficient that the issue be important to the particular parties. Rather . . . it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." **Geniviva v. Frisk**, 725 A.2d 1209, 1213-1214 (Pa. 1999).

Here, similar to numerous other reported decisions, the issue implicates the work-product doctrine. Clearly, this issue affects individuals other than the litigants because the trial court ruling will affect the manner in which the work-product doctrine applies in similar situations. Accordingly, we find that the claims raised by Appellant meet the importance element of Rule 313.

As we stated above, once the documents are handed over, the claim of privilege will be irreparably lost.

For the foregoing reasons, we conclude that the trial court's February 22, 2017 order satisfies the criteria for a collateral order set forth by Rule 313.

Turning to the issue of privilege, Pennsylvania Rule of Civil Procedure 4003.1 defines the scope of discovery:

> (a) Subject to the provisions of Rules 4003.2 to 4003.5 inclusive and Rule 4011, a party may obtain discovery **regarding any matter**, **not privileged**, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.
>
> (b) It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
>
> (c) Except as otherwise provided by these rules, it is not ground for objection that the information sought involves an opinion or contention that relates to a fact or the application of law to fact.

(emphasis added). "Generally, discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried." ***PECO Energy Co. v. Insurance Company of North America***, 852 A.2d 1230, 1233 (Pa. Super. 2004) (citation and internal quotation marks omitted).

Although the former version of Rule 4011(d), which was amended in 1978, restricted the discovery of trial preparation material,[1] Rule 4003.3 now permits it. Rule 4003.3 provides:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 **even though prepared in anticipation of litigation or trial** by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

---

[1] The 1978 amendment to Rule 4011 deleted subsection (d) which limited the discovery of trial preparation material.

Pa.R.C.P. No. 4003.3 (emphasis added). However, the disclosure of this material is subject to the work-product privilege, and is divided into two categories: attorney work product and non-attorney work product:

> [Rule 4003.3] permits it, subject to the limitation that discovery of the work product of an attorney may not include disclosure of the mental impressions, conclusions, opinions, memoranda, notes, legal research or legal theories of an attorney. As to any other representative of a party, it protects the representative's disclosure of his mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics. Memoranda or notes made by the representative are not protected.

Pa.R.C.P. No. 4003.3, Explanatory Comment.[2]

The rule obviously sets a different restriction on material prepared by a party's attorney compared to material sought from a party's representative. Our Supreme Court set a high bar of protection in relation to the discovery of the work product of an attorney, which may not include disclosure of the mental impressions, conclusions, opinions, memoranda, notes, legal research or legal theories of an attorney.  On the other hand, as to materials produced by any other representative of a party, the rule only prohibits the disclosure

---

[2] "[A] note to a rule or an explanatory comment is not a part of the rule, but may be used in construing the rule." ***Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity***, 32 A.3d 800, 809 (Pa. Super. 2011), ***aff'd sub nom.***, 91 A.3d 680 (Pa. 2014) (quoting ***Boatin v. Miller***, 955 A.2d 424, 427 (Pa. Super. 2008)).

of the representative's mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics. "Memoranda or notes made by the representative are not protected." *Id*.

Here, the trial court entered an order on February 22, 2017, which overruled the Archdiocese's objection to the subpoena issued by McIlmail. The trial court essentially decided that the witness statements, as recorded by the private investigator retained by the Archdiocese's counsel, were discoverable as the product of a party's representative.

Whether the trial court properly applied the work-product doctrine, as defined under Rule 4003.3, is a matter of law. *See Barrick*, 32 A.3d at 808. "Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law." *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 215 (Pa. 2014) (citations omitted). Accordingly, our standard of review is *de novo* and to the extent necessary, the scope of review is plenary. *See Estate of Paterno v. National Collegiate Athletic Ass'n (NCAA)*, 168 A.3d 187, 198 (Pa. Super. 2017)

Therefore, we must review the applicability of the work-product doctrine with regard to the investigator's notes and summaries of witness interviews, excluding of course the investigator's conclusions and mental impressions. The party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked. *See Yocabet v. UPMC Presbyterian*,

119 A.3d 1012, 1019 (Pa. Super. 2015). Consequently, the Archdiocese must establish that the work-product doctrine was properly invoked with respect to the notes and summaries written by the investigator, not the attorney.

The Archdiocese challenges the trial court's interpretation of the work product doctrine, arguing that the notes and memoranda of the witness interviews, conducted by the private investigator acting at the express direction of counsel, are protected by the work-product doctrine to the same extent as if the interviews were conducted by counsel. The Archdiocese argues that an investigator hired by defense counsel does not fall under the classification of a *party representative* referenced in Rule 4003.3, but rather should be considered an *agent of the attorney*. Therefore, the Archdiocese contends the investigator's notes and files fall under the broader protection of work product applicable to attorneys under Rule 4003.3.

After careful review of the record and the applicable Pennsylvania Rules of Civil Procedure, including the case law interpreting those rules, we conclude that conferring attorney work-product protection to the investigator's notes of the interviews would impermissibly expand Rule 4003.3.

The interpretation of the Rule 4003.3, as proposed by the Archdiocese in this case, could potentially corrode the clear distinction that the Rule makes between the work-product of an attorney with that of a non-attorney representative. The work-product of an attorney must necessarily relate to legal work performed for a client, not to notes memorializing the statements

of witnesses taken by an investigator acting a mere agent of the client or of the attorney. To apply the privilege in such a situation as presented here would ignore the differences specified in Rule 4003.3.

The intent behind Rule 4003.3 is to shield the mental processes of an attorney, designed to protect from disclosure an attorney's thoughts and views about a case including theories, mental impressions or litigation plans. The production of the documents requested by McIlmail will, in no way, infringe upon the protection granted to an attorney's work product. These documents relate solely to factual information obtained by the investigator from the potential witnesses, and do not reflect, in any manner whatsoever, the thought process of the attorneys involved.

> The protection against the discovery of work product is designed to shelter the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. . . The underlying purpose of the work product doctrine is to guard the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case.

*Estate of Paterno*, 168 A.3d at 197–98 (quotation marks and citations omitted).

The Explanatory Comment accompanying Rule 4003.3 states, in pertinent part, "[t]he Rule is carefully drawn and means exactly what it says." Pa.R.C.P. No. 4003.3, Explanatory Comment. Our Court has had prior opportunities to discuss the appropriateness of a trial court's decision to either protect a document from disclosure or order its production under this rule.

The emphasis has traditionally been on whether the document was the work product of an attorney:

> The underlying purpose of the work-product doctrine is to shield the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case. The doctrine promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients.

*T.M. v. Elwyn, Inc.,* 950 A.2d 1050, 1062 (Pa. Super. 2008) (citation omitted). Accordingly, Rule 4003.3 specifically "immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more." Pa.R.C.P. No. 4003.3, Explanatory Comment.

The information requested does not even relate to the interviewer's "mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics" as referenced in Rule 4003.3, let alone the mental processes of the attorneys involved. Nor is this contention argued by the Archdiocese. The materials requested are not memoranda of communications to, or advice from, the Archdiocese's attorneys. The documents identified in the subpoena, and ordered to be disclosed by the trial court, contain primarily factual statements from potential witnesses. We find nothing in the materials that fall within the attorney work-product doctrine.

In support of its contention that these notes of interviews are protected by the work-product doctrine, the Archdiocese relies first upon

*Commonwealth v. Kennedy*, 876 A.2d 939 (Pa. 2005). The Archdiocese points out to us that the decision in *Kennedy* cites *United States v. Nobles*, 422 U.S. 225 (1975), for the proposition that the work-product doctrine extends to cover agents of an attorney. We find *Kennedy* to be distinguishable from the issues in this case.

Initially, we note that the Court in *Kennedy* examined the work-product doctrine in the context of a criminal case, and applied Pennsylvania Rule of Criminal Procedure No. 573. The protections provided in Rule 573 differ dramatically from Rule 4003.3, and no mention is made in Rule 573 of privileges afforded to a representative of a party. Furthermore, our Supreme Court made clear that its adoption of the general work-product doctrine as announced in *Nobles* was restricted to "the context of pre-trial discovery in criminal matters . . . ." 876 A.2d at 946. As to the exact issue before us, the Court in *Kennedy* concluded that

> Rule 573(G) does not state, as the *Nobles* Court did, that the protections afforded to attorneys' work-product under this Rule extend to the work-product of agents of defense attorneys.

*Id*. The Court went on to hold that in criminal proceedings, the work-product doctrine precluded the prosecution from calling as a witness an expert, i.e., an agent, hired by the defense if the defendant decided against calling the agent as a witness at trial. This discussion is inapposite to the issues presented to us here.

The second case cited to us by the Archdiocese is ***Bagwell v. Pennsylvania Department of Education (Bagwell I)***, 103 A.3d 409 (Pa. Cmwlth. 2014). However, the main issue in ***Bagwell I*** was whether the work-product privilege is available to information prepared in anticipation of litigation, and not to other materials obtained by the attorney at other stages of counsel's representation. The Commonwealth Court held that the protection granted to mental impressions is unqualified, and it does not matter whether the materials were prepared in anticipation of litigation. ***Id***. at 417.

Furthermore, the Commonwealth Court cited ***Rittenhouse v. Bd. of Sup'rs*** (Pa. Cmwlth., No. 1630 C.D. 2011, filed April 5, 2012), an unpublished memorandum, in support of its statement that the "work-product privilege . . . may extend to the product of an attorney's representative." ***Rittenhouse*** addressed Pa.R.C.P. No. 4003.3 only in the framework of the latter portion of the rule, i.e., whether information from the Pennsylvania Secretary of Education, as it related to the Sandusky scandal, was protected by the work-product of a "representative of a party" without regard to the attorney work-product doctrine.

Therefore, we disagree with the Appellant that ***Bagwell I*** requires a different conclusion.

For all the foregoing reasons, we affirm the trial court's order in relation to the application of the work-product doctrine and Rule 4003.3. In light of

our decision on the merits of the order to disclose the materials requested, we find no necessity to reach the estoppel issue.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/18