J-A14040-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| FRANCES GALE COLTON, INDIVIDUALLY AND AS THE ADMINISTRATRIX OF THE ESTATE OF TERRY ALAN COLTON, DECEASED, AND MELINA COLTON, AN INDIVIDUAL | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| WEST PENN POWER COMPANY AND ASPLUNDH TREE EXPERT, LLC | : : : : | |
| APPEAL OF: WEST PENN POWER COMPANY | : : | No. 1791 WDA 2019 |

Appeal from the Order Entered November 20, 2019
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD-18-006023

BEFORE: SHOGAN, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED OCTOBER 15, 2020

West Penn Power Company ("West Penn") appeals from the Order granting the Motion to Compel filed by Frances Gale Colton ("Frances"), individually and as the administratrix of the Estate of Terry Alan Colton, deceased ("the Estate"), and Melina Colton ("Melina") (collectively, "Plaintiffs"), and overruling the Objections filed by West Penn in response to Plaintiffs' Fifth Request for Production of Documents. We affirm.

On April 12, 2018, a brush fire erupted in a heavily wooded area on the Coltons' property ("the Property") in West Deer Township, Allegheny County. West Deer Township firefighters responded to the scene, and ultimately

extinguished the fire. While the firefighters were clearing their equipment from the scene, Terry Alan Colton ("Decedent") walked into the wooded area of the Property. Decedent came into contact with a fallen West Penn power line, was electrocuted, and died.[1]

On May 10, 2018, Plaintiffs filed a Complaint against West Penn, alleging claims of wrongful death, survival, and negligent infliction of emotional distress as to Frances and Melina. During May and June 2018, Plaintiffs also filed Notices of their intention to serve subpoenas for the production of documents and items for discovery on various entities.

West Penn filed Preliminary Objections on June 5, 2018, alleging legal insufficiency as to the wrongful death and survival claims, and insufficient specificity regarding the damages demanded for all four claims. Plaintiffs subsequently filed a Brief in Opposition to West Penn's Preliminary Objections. On August 7, 2018, the trial court entered an Order denying West Penn's Preliminary Objections.

West Penn filed an Answer and New Matter on August 27, 2018. Plaintiffs subsequently filed a Reply to West Penn's New Matter.

_____

[1] At that time, Frances and Melina were looking out toward the wooded area from the backyard, and they witnessed (and captured on video) a "flash and fireball." Complaint, 5/10/18, ¶ 38.

On January 31, 2019, after obtaining leave of court, Plaintiffs filed an Amended Complaint, naming Asplundh Tree Expert, LLC ("Asplundh"), as an additional defendant.[2]

West Penn filed an Answer, New Matter, and Cross-Claims on May 1, 2019. West Penn included cross-claims against Asplundh for contribution and indemnification. Plaintiffs filed a Reply.

The parties engaged in discovery. Relevantly, Plaintiffs sent West Penn several sets of Interrogatories and Requests for Production of Documents. On November 20, 2019, Plaintiffs filed a Motion to Compel, claiming that during the course of discovery, Plaintiffs learned that employees or agents of West Penn took photographs of the Property following Decedent's death. Motion to Compel, 11/20/19, ¶ 4. Plaintiffs argued that they sent West Penn the Fourth

_____

[2] In the Amended Complaint, Plaintiffs alleged that "West Penn hired [] Asplundh to provide vegetation management services during West Penn's vegetation management cycles in 2010 and 2015, including the area in and around the [p]ower [l]ines attached to West Penn [u]tility [p]ole[s located on the Property.]" Amended Complaint, 1/31/19, ¶ 23. Plaintiffs claimed that the services were not completed. See id. ¶¶ 26-34. Asplundh is not a party to the instant appeal, and accordingly, we omit the procedural history pertaining only to Asplundh.

Set of Interrogatories[3] and Fifth Request for Production of Documents[4] as a result of learning this information. Id. In its Response to both the Fourth Set of Interrogatories and the Fifth Request for Production of Documents, West Penn sent General Objections, which provide, in relevant part, as follows:

_____

[3] The Fourth Set of Interrogatories provides as follows:

> INTERROGATORY NO 1: Did Denise Holmes [("Holmes")], Brad Gillot [("Gillott")], Brian Elliott, Neil Trout or any other employees or agents of West Penn [] or FirstEnergy [Service Company ("FirstEnergy")] take photographs on April 12 or April 13, 2018[,] at, behind or near the Colton house, including the area where [Decedent] was electrocuted? If the answer is yes, please identify which person(s) took photographs.

Motion to Compel, 11/20/19, Exhibit A (West Penn's Response to Plaintiffs' Fourth Set of Interrogatories). In response, West Penn identified Holmes, Gillott and Joe Musco, but reserved its General Objections. Id.

[4] The Fifth Request for Production of Documents, and West Penn's response thereto, provides as follows:

> REQUEST NO. 1: Produce any and all photographs taken on April 12 or April 13, 2018[,] at, behind or near the Colton house, including the area where [Decedent] was electrocuted[,] by [] Holmes, [] Gillott, Brian Elliott, Neil Trout or any other employees or agents of West Penn [] or First Energy.
>
> RESPONSE: West Penn objects to this request on the basis that it seeks documents protected by the attorney-client privilege and documents that are work product. Subject to and without waiver of this and its General Objections, West Penn responds as follows: West Penn previously produced responsive photographs and is producing a revised privilege log.

Motion to Compel, 11/20/19, Exhibit B (West Penn's Response to Plaintiffs' Fifth Request for Production of Documents).

1. West Penn objects to the [Interrogatories/Requests] to the extent that they seek information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privileges and protection from disclosure recognized by law. West Penn asserts each of these privileges and protections applicable to the information sought to the fullest extent provided by law or applicable rules. Inadvertent disclosure of any such information should not be interpreted as a waiver of any privilege or waiver of any other ground for objecting to discovery with respect to such information or its subject matter. Nor should such inadvertent disclosure be interpreted as a waiver of West Penn's right to object to the use of any such information in this or any other action. All answers set forth in these responses refer only to non-privileged information.

Motion to Compel, 11/20/19, Exhibit A (West Penn's Response to Plaintiffs' Fourth Set of Interrogatories), Exhibit B (West Penn's Response to Plaintiffs' Fifth Request for Production of Documents).

West Penn filed a Memorandum in Opposition to Plaintiffs' Motion to Compel, arguing that the photographs were taken at the direction of its legal counsel, for the purpose of communicating information to counsel. West Penn therefore asserted that the photographs constitute privileged communications.

On November 20, 2019, the trial court entered an Order granting Plaintiffs' Motion to Compel and overruling West Penn's Objection to Request No. 1 in Plaintiffs' Fifth Request for Production of Documents. The trial court directed West Penn to provide all photographs in response within 10 days of

the date of the Order.    West Penn filed a Notice of Appeal on December 2, 2019.[5]

On appeal, West Penn raises the following issue for our review:

> Did the trial court err by holding that post-incident photographs of the Colton property, taken at counsel's direction under West Penn's policy, maintained in confidence, and used by counsel to advise West Penn, are not shielded from disclosure under the attorney-client privilege, the attorney work product doctrine, or both?

Brief for Appellant at 7.

As an initial matter, we must determine whether this appeal is properly before this Court.   "The appealability of an order directly implicates the jurisdiction of the court asked to review the order."  Estate of Considine v. Wachovia Bank, 966 A.2d 1148, 1151 (Pa. Super. 2009) (citation and brackets omitted).   However "[a]n appeal may be taken as of right from a collateral order of a trial court or other government unit."  Pa.R.A.P. 313(a).

> A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

_____

[5] On December 24, 2019, this Court entered an Order directing West Penn to show cause why the appeal should not be quashed.  Order, 12/24/19 (citing T.M. v. Elwyn, Inc., 950 A.2d 1050, 1056 (Pa. Super. 2008) (explaining that discovery orders are generally not final and appealable orders)).  West Penn filed a timely Response, asserting that this Court could exercise jurisdiction pursuant to the collateral order doctrine.  This Court subsequently discharged its show-cause Order, and referred the matter to the merits panel.  We will discuss the applicability of the collateral order doctrine, infra.

Pa.R.A.P. 313(b). All three prongs of the test must be satisfied before an appellate court can exercise jurisdiction. See Rae v. Pa. Funeral Dirs. Ass'n, 977 A.2d 1121, 1125 (Pa. 2009); see also id. at 1123, 1129 (explaining that the collateral order doctrine is narrowly construed, and adopting an issue-by-issue approach to its application); Commonwealth v. Williams, 86 A.3d 771, 780 (Pa. 2014) (stating that "the collateral order doctrine is to be narrowly construed in order to buttress the final order doctrine").

> Generally, discovery orders are deemed interlocutory and not immediately appealable, because they do not dispose of the litigation. On the other hand, discovery orders requiring disclosure of privileged materials generally are appealable under Rule 313 where the issue of privilege is separable from the underlying issue. This is because if immediate appellate review is not granted, the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot. See Rhodes v. USAA Cas. Ins. Co., 21 A.3d 1253, 1258 (Pa. Super. 2011); Dibble v. Penn State Geisinger Clinic, Inc., 806 A.2d 866, 870 (Pa. Super. 2002) ("[T]here is no question that if the documents which have been disclosed are in turn disseminated … appellate review of the issue will be moot because such dissemination cannot be undone.").

McIlmail v. Archdiocese of Phila., 189 A.3d 1100, 1104-05 (Pa. Super. 2018).

West Penn argues that it is entitled to collateral review because (1) the Order compelling West Penn to produce photographs at the direction of legal counsel is separable from the merits of the underlying action; (2) claims of privilege and work product "implicate rights rooted in public policy;" and (3) "[p]ost-disclosure review is not an effective remedy for an erroneous order"

regarding privilege and work product. Brief for Appellant at 5 (citing Commonwealth v. Harris, 32 A.3d 243, 248-49 (Pa. 2011), and Williams, 86 A.3d at 781-82, 784).[6]

Here, the resolution of the trial court's Order directing West Penn to provide all photographs in response to Plaintiffs' Fifth Request for Production of Documents can be resolved without addressing the merits of the underlying causes of action (i.e., wrongful death, survival, and negligent infliction of emotional distress). See Williams, 86 A.3d at 781 (stating that "[a]n order is separable from the main cause of action if it can be resolved without an analysis of the merits of the underlying dispute."). Second, Pennsylvania courts have held that discovery orders implicating attorney-client privilege and the work product doctrine satisfy the importance prong. See id. at 782 (stating that "the [Supreme] Court has generally viewed discovery orders implicating claims of privilege or work product to be appealable under Rule 313."); McIlmail, 189 A.3d at 1105 (concluding that discovery order

_____

[6] We observe that West Penn's argument concerning the applicability of the collateral order doctrine contains only conclusory statements. West Penn primarily rests on our Supreme Court's statement in Harris that "orders overruling claims of privilege and requiring disclosure are immediately appealable under Pa.R.A.P. 313." Harris, 32 A.3d at 251 (reaffirming Ben v. Schwartz, 729 A.2d 547 (Pa. 1999)). However, the Supreme Court has clarified that "even post-Harris, in cases where the propriety of an appeal involving the attorney-client privilege or the work product doctrine is contested, we have still required the appealing party to establish each of the three prongs of the collateral order test...." Shearer v. Hafer, 177 A.3d 850, 858 (Pa. 2018).

compelling disclosure of notes taken during witness interviews by defendant's private investigator satisfied the importance prong; the issue implicated the word-product doctrine, which "affects individuals other than the litigants because the trial court ruling will affect the manner in which the work-product doctrine applies in similar situations."). Finally, regarding the third prong, "once material has been disclosed, any privilege is effectively destroyed." Harris, 32 A.3d at 249; see also McIlmail, 189 A.3d at 1104 (explaining that "the disclosure of documents cannot be undone and subsequent appellate review would be rendered moot."). Thus, we conclude that the collateral order doctrine's requirements have been satisfied, and we will proceed to address the merits of West Penn's claims.[7]

We begin with an examination of the process through which the photographs were taken. The record reflects that West Penn contracts with FirstEnergy for certain services, including FirstEnergy's Legal Department ("the Legal Department"). Memorandum in Opposition to Motion to Compel, 12/3/19, Exhibit B (Affidavit of Erika Ostrowski), ¶ 2.[8] "The Legal Department

_____

[7] Although West Penn provided only one question in their Statement of Questions Involved, it addressed the issues of attorney-client privilege and work product separately in its Argument, and we will address them separately. See Pa.R.A.P. 2119(a) (providing that "[t]he argument shall be divided into as many parts as there are questions to be argued[.]").

[8] In April 2018, Erika Ostrowski, Esquire ("Attorney Ostrowski"), held the title "Attorney V" at FirstEnergy. At the time the Affidavit was prepared, Attorney Ostrowski was Managing Counsel.

includes the Corporate Claims group, which handles certain claims for West Penn and other FirstEnergy operating companies involving serious incidents, which include cases involving death or bodily injury." Id., ¶ 3. Under West Penn's policy, the Legal Department handles investigations involving serious incidents, with assistance from regional claims personnel and West Penn employees. Id., ¶ 4. "The purpose of this investigation is to provide information to West Penn's counsel for use in advising the company and in the defense of any future claim or litigation." Id. Scott Sabo, Esquire ("Attorney Sabo"), the Legal Department's manager of the Corporate Claims group, was responsible for the Colton investigation. Id., ¶ 3.

Holmes, the Claims Manager for West Penn, is responsible, in part, for supporting Legal Department investigations concerning serious injuries involving West Penn. Memorandum in Opposition, 12/3/19, Exhibit C (Affidavit of Denise Holmes), ¶¶ 2, 4. Holmes was notified of the incident involving the Deceased on April 12, 2018, and she notified Gillott. Id., ¶ 5. Holmes visited the Colton property that night. Id., ¶ 6. On April 13, 2018, Holmes returned to the Colton property with Gillott "to continue the Legal Department's investigation...." Id., ¶ 7. Holmes took photographs "to convey information to West Penn's counsel[,]" and saved the photographs in an electronic claims file. Id., ¶¶ 8, 9.

Gillott, a Senior Corporate Claims Representative for FirstEnergy, learned of the incident at the Colton property on April 12, 2018. Memorandum

in Opposition, 12/3/19, Exhibit E (Affidavit of Brad R. Gillott), ¶¶ 2, 3. After receiving notification of the incident from Holmes, Gillott notified his supervisor, Attorney Sabo. Id., ¶ 4. On April 13, 2018, Gillott joined Holmes at the Colton property "to assist in the Legal Department's investigation." Id., ¶ 5. Gillott took photographs at the Colton property, and later "gave the photographs to Attorney Sabo for his use and for inclusion in the Legal Department's file." Id., ¶¶ 7, 8.

In its first claim, West Penn contends that the post-incident photographs are protected by attorney-client privilege. See Brief for Appellant at 14-24. West Penn argues that the attorney-client privilege applies to communications between a corporate client's employees and the corporation's counsel, as well as to communications to an agent assisting counsel. Id. at 16-17. According to West Penn, the photographs taken by Holmes and Gillott should be protected by the privilege, because they are agents of counsel. Id. at 19. West Penn claims that the photographs constitute "communications" for the purpose of applying privilege law. Id. at 19-23 (collecting cases from various jurisdictions); see also id. at 23 (arguing that the photographs "'depict[]' what West Penn's agent (Holmes) and West Penn's counsel's agents (both Holmes and Gillott) wished to convey to counsel about the 'accident scene.'").

> Whether the attorney-client privilege ... protects a communication from disclosure is a question of law. Thus, our standard of review is de novo and our scope of review is plenary. Pennsylvania law defines the attorney-client privilege by statute as follows:

> § 5928.  Confidential communications to attorney
>
> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa.C.S.A. § 5928. ...

Knopick v. Boyle, 189 A.3d 432, 439 (Pa. Super. 2018) (some citations omitted).

> In Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice.  In describing the purpose of privilege, we have said:  The attorney-client privilege exists to foster confidence between attorney and client that will lead to a trusting and open dialogue.
>
> Pennsylvania law imposes a shifting burden of proof in disputes over disclosure of communications allegedly protected by attorney-client privilege.  The party invoking a privilege must initially set forth facts showing that the privilege has been properly invoked; then the burden shifts to the party seeking disclosure to set forth facts showing that disclosure will not violate attorney-client privilege, e.g., because the privilege has been waived or because some exception applies.  Accordingly, if the party asserting the privilege does not produce sufficient facts to show that the privilege was properly invoked, then the burden never shifts to the other party, and the communication is not protected under attorney-client privilege.
>
> Four elements must be satisfied in order to invoke successfully the protections of attorney-client privilege:
>
> > 1) The asserted holder of the privilege is or sought to become a client.
> >
> > 2) The person to whom the communication was made is a member of the bar of a court, or his subordinate.

- 12 -

3) The communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort.

4) The privilege has been claimed and is not waived by the client.

Where the attorney-client privilege has been invoked by a corporate client, … this privilege attaches to communications made by corporate as well as individual clients.

*Newsuan v. Republic Servs. Inc.*, 213 A.3d 279, 284-85 (Pa. Super. 2019) (emphasis added; citations, quotation marks, and brackets omitted); see also *Red Vision Sys., Inc. v. Nat'l Real Estate Info. Servs., L.P.*, 108 A.3d 54, 60 (Pa. Super. 2015) (stating that "when the client is a corporation, the privilege extends to communications between its attorney and agents or employees authorized to act on the corporation's behalf." (citation, quotation marks and brackets omitted)).

Regarding West Penn's assertion of attorney-client privilege, the trial court concluded that West Penn failed to establish that the photographs constitute a "communication." Trial Court Opinion, 1/3/20, at 6. The trial court stated that "[t]he photographs at issue are merely a depiction of the accident scene, and, as such, there is nothing that the client is 'communicating' to counsel." Id. at 6-7.

We agree with the trial court's determination. The photographs at issue constitute nothing more than facts about what the scene looked like. See

Custom Designs & Mfg. Co. v. Sherwin-Williams Co., 39 A.3d 372, 378 (Pa. Super. 2012) (stating that "a fact does not enter a non-discoverable sphere solely by virtue of its having been communicated to counsel."). The Affidavits West Penn attached to its Memorandum in Opposition do not indicate that West Penn's corporate counsel specifically directed Holmes and Gillott to visit the scene of the incident and take photographs in preparation for the lawsuit. Rather, the Affidavits describe West Penn's general policy to investigate serious incidents. See Memorandum in Opposition, 12/3/19, Exhibit C (Affidavit of Denise Holmes), ¶¶ 2-4 (indicating that as a Regional Claims Manager, Holmes is responsible for supporting investigations of serious injuries under West Penn's policy); Exhibit D (Affidavit of Brad R. Gillot), ¶ 3 (explaining that the Corporate Claims group handles claims involving serious incidents). Accordingly, because the photographs are not communications conveyed to counsel "for the purpose of securing either an opinion of law, legal services or assistance in a legal matter," Newsuan, 213 A.3d at 285, West Penn did not successfully invoke attorney-client privilege. See generally Custom Designs, 39 A.3d at 379 (concluding that attorney-client privilege was not properly invoked, where corporation's representative visited the scene of a fire out of concern for a major client, and was not directed by counsel to investigate the scene to prepare for litigation).

In its second claim, West Penn asserts that the photographs are protected as attorney work product. See Brief for Appellant at 25-31. West

Penn claims that Holmes and Gillott took photographs as counsel's agents, and at counsel's request. Id. at 27, 28. West Penn also argues that the photographs were taken on behalf of the client, "as part of the Legal Department's investigation to prepare West Penn's legal defense." Id. at 27. According to West Penn, the photographs reveal Holmes's and Gillott's impressions and conclusions about the scene. Id. at 29.

Pennsylvania Rule of Civil Procedure 4003.1 defines the general scope of discovery:

> (a) Subject to the provisions of Rules 4003.2 and 4003.5 inclusive and Rule 4011, a party may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, content, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

Pa.R.C.P. 4003.1(a) (emphasis added).

The work product doctrine is governed by Rule 4003.3, which provides as follows:

> Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his or her attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his or her mental impressions, conclusions or opinions respecting the value

- 15 -

> or merit of a claim or defense or respecting strategy or tactics.

Pa.R.Civ.P. 4003.3 (emphasis added); see also Estate of Paterno v. Nat'l Collegiate Athletic Ass'n, 168 A.3d 187, 197 (Pa. Super. 2017) (stating that "[t]he protection against the discovery of work product is designed to shelter the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his client's case." (citation and quotation marks omitted)). Additionally, the Explanatory Comment to Rule 4003.3 advises that the rule permits discovery of "documents, reports and tangible things prepared in anticipation of litigation or for trial," but includes the following limitation:

> [D]iscovery of the work product of an attorney may not include disclosure of the mental impressions, conclusions, opinions, memoranda, notes, legal research or legal theories of an attorney. As to any other representative of a party, it protects the representative's disclosure of his mental impressions, conclusion or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics. Memoranda or notes made by the representative are not protected.

Pa.R.Civ.P. 4003.3, Explanatory Comment (emphasis added); McIlmail, 189 A.3d at 1107.

"Whether the trial court properly interpreted and applied Rule 4003.3 presents a question of law. Our standard of review is de novo and our scope of review is plenary." Estate of Paterno, 168 A.3d at 198 (citations omitted).

West Penn, as the party invoking the work product doctrine, must establish that it properly invoked the doctrine concerning the photographs taken by Holmes and Gillott. See McIlmail, 189 A.3d at 1107.

The trial court determined that the photographs are not protected by the work product doctrine:

> [E]mployees of West Penn's [L]egal [D]epartment have only a general policy to take photographs of accident scenes. There is no basis to conclude from the available record or argument of counsel that an attorney gave any specific instructions as to what should be photographed. Because counsel gave no specific instruction regarding what was to be photographed, there is no threat that an attorney's mental impressions or thought process will be revealed by the production of the photographs at issue. The photographs at issue were taken as part of West Penn's routine practice of photographing an accident scene and, thus, relate solely to factual information regarding the accident scene at issue, and not counsel's mental impressions.

Trial Court Opinion, 1/3/20, at 5. We agree with the trial court's determination.

While Holmes and Gillott may reasonably be characterized as agents or representatives of West Penn, such designation does not, as West Penn suggests, end our inquiry. The Affidavits of Attorney Ostrowski, Holmes, and Gillott indicate that the photographs at issue were taken as part of a standard investigation into a serious incident. See Memorandum in Opposition, 12/3/19, Exhibit B (Affidavit of Erika Ostrowski), ¶ 4 (explaining that West Penn's policy dictates that investigations involving serious incidents are handled by the Legal Department, including local support personnel); Exhibit C (Affidavit of Denise Holmes), ¶¶ 2-4 (stating that cases involving serious

incidents are handled by the Legal Department and support staff, and that Holmes's job responsibilities include supporting investigations of serious incidents); Exhibit D (Affidavit of Brad C. Gillott), ¶ 6 (stating that West Penn's policy provides that investigations of serious incidents are handled by the Legal Department). West Penn has not established that the photographs were taken "at the behest of the attorney." Commonwealth v. Hetzel, 822 A.2d 747, 758 (Pa. Super. 2003).[9]

Further, Plaintiffs sought only the photographs themselves. As Rule 4003.3 and its Explanatory Comment make clear, the work product doctrine prohibits discovery only of a party representative's "mental impressions,

_____

[9] West Penn relies heavily on Hetzel in support of its argument, as it involved the protection of photographs under the work product doctrine. In Hetzel, a defendant in a murder case challenged the validity of a search warrant "which sought from [a] forensic odontologist ... all photographs, tracings or diagrams of a bite mark on [the defendant]." Hetzel, 822 A.2d at 756 (internal quotation marks omitted). The trial court permitted the Commonwealth to seize photographs and tracings (with any writing redacted), and the Commonwealth provided the evidence to a second forensic odontologist for review. Id. The Commonwealth then obtained dental impressions to match the victim. Id. This Court concluded that the photographs and tracings made by the first odontologist were protected by the work product doctrine, because the materials were made at defense counsel's request. Id. at 758. Here, unlike in Hetzel, there is no indication in the record that West Penn's counsel specifically directed Holmes and Gillott to take particular photographs at the Colton property. Moreover, we note that the Hetzel Court was tasked with examining the work product doctrine in the context of a criminal case. See Commonwealth v. Kennedy, 876 A.2d 939, 946 (Pa. Super. 2005) (explaining that the work product doctrine in criminal cases is governed by Pa.R.Crim.P. 573(G), which contains different language than Rule 4003.3, and does not expressly extend protection to work product of agents of an attorney).

conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics." Pa.R.Civ.P. 4003.3; see also id., Explanatory Comment. We are not persuaded by West Penn's contention that the photographs reveal its representative's impressions of the scene. The photographs, absent any notations by counsel or counsel's agents, provide nothing more than factual information about the scene of the incident. See McIlmail, 189 A.3d at 1107-08 (concluding that documents requested from the Archdiocese's private investigator—notes and summaries of witness interviews—were not protected by the work product doctrine, because they "relate[d] solely to factual information obtained by the investigator from a potential witness[.]"); see also id. (stating that an expansion of the work product doctrine to include the investigator's interview notes, which did not contain mental impressions, conclusions or opinions, as described in Rule 4003.3, "could potentially corrode the clear distinction that the Rule makes between the work[ ] product of an attorney with that of a non-attorney representative."). Thus, because the materials requested are not unrelated to Holmes's and Gillott's "mental impressions, conclusions or opinions" concerning a potential defense strategy or claim, or other trial tactics, West Penn's second claim fails.

Based upon the foregoing, we affirm the trial court's Order granting Plaintiff's Motion to Compel, and denying West Penn's Objections.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/15/2020</u>