J-A16013-25

2025 PA Super 243

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYLER NIKONOWICZ | : | |
| | : | |
| Appellant | : | No. 2708 EDA 2023 |

Appeal from the Order Entered September 13, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004301-2023

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and KING, J.

OPINION BY LAZARUS, P.J.: **FILED OCTOBER 28, 2025**

Tyler Nikonowicz appeals from the order, entered in the Court of Common Pleas of Delaware County, deeming him incompetent to be tried and involuntarily committing him to a facility for treatment. After careful review, we reverse.

During the pendency of this appeal, the trial court granted the Commonwealth's request to *nolle pros* the underlying criminal charges. We, therefore, simply note that the affidavit of probable cause alleged the following events. On May 18, 2023, Media Borough Police Department officers stopped Nikonowicz on the street after he called 911 approximately nine times in eight minutes. Nikonowicz reported each time that he had been raped in his sleep before abruptly ending the call. The dispatcher reported that Nikonowicz sounded as if he were under the influence. Officers located Nikonowicz, who acted aggressively and accused them of being pedophiles and rapists. The

officers believed that Nikonowicz may have been mentally ill and, ultimately, arrested him for, among other crimes, false reports and resisting arrest.

On August 7, 2023, the Commonwealth filed a petition for involuntary commitment pursuant to the Mental Health Procedures Act (MHPA), 50 P.S. §§ 7101–7503. The petition stated that, on August 1, 2023, Marc Gramatges, M.D., interviewed Nikonowicz at the local correctional facility. Doctor Gramatges reported that Nikonowicz "lacked sufficient psychological and cognitive capacity to proceed to trial and should be considered incompetent." Petition, 8/7/23, at ¶ 2. The trial court held a competency hearing on September 12, 2023, with Dr. Gramatges testifying as an expert witness. The trial court granted the petition and ordered Nikonowicz committed to a psychiatric inpatient facility.

Nikonowicz filed a timely notice of appeal, asserting that the instant order is appealable as of right pursuant to Pa.R.A.P. 313. Nikonowicz filed a court-ordered Pa.R.A.P. 1925(b) concise statement errors complained of on appeal. The trial court filed an opinion on December 14, 2023, and transmitted the record to this Court. While this appeal was pending, the trial court held a status hearing to review Nikonowicz's treatment. On March 13, 2024, the trial court deemed Nikonowicz competent to proceed and the criminal proceedings resumed. The Commonwealth filed a criminal information on February 1, 2025. Ten days later, the Commonwealth

requested permission to *nolle pros* the charges, which the trial court granted.[1]

Nikonowicz raises two issues for our review.

1. Whether the procedure by which the competency evaluation was ordered, and a finding of incompetence made, violated the [MHPA] and [Nikonowicz]'s Due Process rights under the United States and Pennsylvania Constitutions, inasmuch as the competency evaluation was ordered by a magisterial district judge in the absence of a hearing and the lower court exceeded the time frame within which a determination of competency could be made?

2. Whether the evidence was sufficient to establish that [Nikonowicz] was incompetent, such that the finding of incompetence violated the [MHPA] and [Nikonowicz]'s Due Process rights under the United States and Pennsylvania Constitutions?

Appellant's Brief, at 6.

We begin by addressing two threshold matters: whether this Court has jurisdiction over this appeal and whether the termination of criminal charges against Nikonwicz has mooted the issues. The two points are related, as the Commonwealth maintains that the lack of a pending prosecution is relevant to our jurisdiction. We begin with a brief statutory discussion of the pertinent provisions of the MHPA.

Article IV of Chapter 15 of the MHPA applies to the examination and treatment of persons charged with a crime. Treatment is authorized for "incompetent defendants" who are defined as persons whom the trial court determines "to be substantially unable to understand the nature or object of

_____

[1] It is unknown if the order granting the Commonwealth's motion barred the Commonwealth from refiling charges.

- 3 -

the proceedings against [them] or to participate and assist in [their] defense[.]" 50 P.S. § 7402(a) (section 402). Section 402(b) permits the court to "order involuntary treatment of a person found incompetent to stand trial but who is not severely mentally disabled, such involuntary treatment not to exceed a specific period of 60 days." *Id.* at § 7402(b). The court did so here. *See* Order, 9/12/23 ("Pursuant to . . . [section 402(b)], [Nikonowicz] is hereby committed . . . for treatment and evaluation for a period not to exceed 60 days[.]"). In turn, this finding triggered "a stay of the prosecution for so long as such incapacity persists[.]" 50 P.S. § 7403(b) (section 403). An incompetent individual is entitled to counsel while charges are pending, and "the person charged shall be reexamined not less than every 90 days by a psychiatrist appointed by the court and a report of reexamination shall be submitted to the court and to counsel." *Id.* at § 7403(c). Notably, neither section 402 nor 403 includes a mechanism for judicial review.

With that background in mind, we first address whether this Court has jurisdiction to entertain the appeal. By rule, "an appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341. "Final orders are those that dispose of all claims and all parties, are explicitly defined as final orders by statute, or are certified as final orders by the trial court or other reviewing body." *Commonwealth v. Harris*, 32 A.3d 243, 248 (Pa. 2011). The instant order is not a final order, as the prosecution remained pending.

"In limited circumstances, however, we may consider interlocutory appeals. One type of interlocutory appeal is that involving a collateral order." *Commonwealth v. Schultz*, 133 A.3d 294, 308 (Pa. Super. 2016). A collateral order is defined as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). "Whether an order is appealable under Rule 313 is a question of law. As such, our review is plenary." *Commonwealth v. Williams*, 86 A.3d 771, 781 (Pa. 2014).

Our Supreme Court has directed that Rule 313 "is to be construed narrowly, and we require every one of its three prongs be clearly present before collateral appellate review is allowed." *Rae v. Pennsylvania Funeral Dirs. Ass'n*, 977 A.2d 1121, 1126 (Pa. 2009). We do so "to avoid 'undue corrosion of the final order rule,' and to prevent delay resulting from 'piecemeal review of trial court decisions.'" *K.C. v. L.A.*, 128 A.3d 774, 778 (Pa. 2015) (citations omitted). We do not apply a "whole order" approach. Instead, following the lead of the United States Supreme Court, we apply an "issue-by-issue approach" and restrict appeal to "those issues which independently satisfy the collateral order test, rather than permitting whole order review of an entire case once one issue crosses the collateral order threshold." *Rae*, 977 A.2d at 1128. In this case, the two issues present identical considerations; thus, we will treat them as one overarching issue.

- 5 -

The Commonwealth agrees that the first prong is met, as "the court's determination of incompetence is separable from the underlying question of criminal guilt." Commonwealth's Brief, at 11. It, however, disputes the second and third prongs, citing as support for both arguments the absence of an ongoing prosecution. Thus, in its view, the "right involved" is not important because it "cannot be said to even impact [Nikonowicz]" since both his commitment and the prosecution have ended. *Id.* at 12. Similarly, addressing whether Nikonowicz's claim will be forever lost, the Commonwealth asserts that "his claims are already 'lost'" since the charges have been withdrawn. *Id.*

We disagree with the Commonwealth that events following the filing of the notice of appeal bear on our analysis of the three prongs. For the sake of uniformity, we conclude that the Rule 313 analysis must be tied to the moment in time the notice of appeal was filed. The doctrine is framed in terms of whether the order is "**immediately** appealable," which textually suggests the assessment is made at the time of appeal without reference to subsequent events. *K.C.*, *supra* at 777 ("Otherwise known as the collateral order doctrine, Rule 313(b) provides that an interlocutory order is collateral and, therefore, immediately appealable, if . . . ."). Furthermore, assessing the circumstances as of the day of appeal is consistent with the fact that the collateral order doctrine tends to employ a categorical approach with respect to the discrete legal issue. *See, e.g. Commonwealth v. Harris*, 32 A.3d 243, 249 (Pa. 2011) (stating orders requiring disclosure of confidential

information generally qualify as collateral, as "[o]nce putatively privileged material is in the open, the bell has been rung, and cannot be unrung by a later appeal"). While that approach is "tempered by an appreciation that the collateral order doctrine is to be narrowly construed in order to buttress the final order doctrine," **Shearer v. Hafer**, 177 A.3d 850, 858 (Pa. 2018), the salient point is that the assessment of whether an interlocutory order qualifies as a collateral order focuses on the substantive legal issue. In this respect, the points raised by the Commonwealth fall under the rubric of justiciability, not jurisdiction. **See Town of McCandless v. McCandless Police Officers Ass'n**, 901 A.2d 991, 1002 (Pa. 2006) ("Mootness poses a question of justiciability and is related to the concepts of standing and ripeness; all three are concerned with the proper timing of litigation."). The flaws with the Commonwealth's position are evident when one considers the fact that its arguments suggest this order may have qualified as collateral had this Court been able to review the claims on an expedited basis the day after the trial court filed its opinion. The bench and bar would have little guidance on whether an order qualifies as collateral if the "when" is analyzed instead of the "what."

We now analyze the three prongs of the collateral order doctrine. Beginning with the first, we agree with the Commonwealth that the issue of whether Nikonowicz was lawfully involuntarily committed is separable from and collateral to the main cause of action, i.e., Nikonowicz's culpability. In **Commonwealth v. Nuzzo**, 284 A.3d 1243, 1249 (Pa. Super. 2022), counsel

for defendant Marc Nuzzo filed a petition for a competency determination but sought to seal the petition. The trial court declined the request to seal on the basis that the petition qualified as a public document. Nuzzo filed a notice of appeal and asserted that appeal was as-of-right pursuant to Rule 313. We agreed that the order qualified as collateral under Rule 313; with respect to the first prong, we stated:

> There is little dispute that [Nuzzo] raises a claim that is separable from the main cause of action since the confidential status of the competency petition is capable of review without consideration of the main substantive issues in this criminal proceeding. More specifically, we may adjudicate [Nuzzo]'s privacy interest in his medical and mental health records without a determination of his competency to stand trial or an adjudication of his criminal responsibility for the alleged offenses, which are inquiries critical to the pre-trial and trial phases of this case. As such, the instant appeal is separable from the merits of the underlying criminal prosecution, including the underlying issue of [Nuzzo]'s culpability.

*Id.* at 1250.

Similarly, the legality of Nikonowicz's involuntary commitment is separable from his culpability and does not require any analysis of whether he was guilty of the alleged crimes. Thus, the first prong is met.

Turning to the second prong—the importance of the interest involved—"we weigh the interests implicated in the case against the costs of piecemeal litigation." ***Ben v. Schwartz***, 729 A.2d 547, 552 (Pa. 1999). Nikonowicz asserts a broad due process-based liberty interest in not being confined without sufficient evidence of incompetency and strict compliance with procedural protections. He also raises an interest in the existence of the

records generated as a result of the commitment. *See* Appellant's Brief, at 22 ("[T]he finding of incompetency must be vacated, otherwise any future examiner could inquire of the records from the September 12, 2023 order[.]").

Involuntary commitment constitutes a serious deprivation of liberty, but it is not clear that it qualifies as worthy of immediate review since "the rights involved must implicate more than just the individual parties in the matter[] and, instead, must be deeply rooted in public policy going beyond the particular litigation at hand." *J.C.D. v. A.L.R.*, 303 A.3d 425, 431 (Pa. 2023) (quotation marks and citation omitted). Criminal defendants routinely face long periods of incarceration pending trial and must await final judgment to appeal issues such as suppression of critical evidence. We, therefore, do not agree that "commitment to an inpatient psychiatric facility is too important to be denied review" based solely on the fact of commitment. Appellant's Brief, at 2. Concerns regarding an invalid commitment or lengthy suspension of charges[2] can be challenged via an "allowance of appeal from an interlocutory order by permission, and we have concluded that [the] discretionary process would be undermined by an overly permissive interpretation of Rule 313's limited grant of collateral appeals as of right." *Rae*, 977 A.2d at 1126.

However, we agree that the records created due to the commitment favor immediate review. As a preview of sorts concerning the mootness issue,

_____

[2] The stay of criminal proceedings could have been extended, subject to the required review every ninety days, up to the maximum sentence of confinement or ten years, whichever is less. *See* 50 P.S. § 7403(f).

we have reviewed involuntary commitment orders despite their mootness on the grounds that "a live controversy still exists since involuntary commitment orders involve important liberty interests over which it behooves us to maintain appellate vigilance[.]" *In re S.O.*, 492 A.2d 727, 733 (Pa. Super. 1985). The liberty interest is partly rooted in the difficulty of adjudicating such issues in a timely fashion, as "[a]ppeals from orders for involuntary commitment rarely reach this Court" before the maximum period of commitment expires. *In re Ann S.*, 421 A.2d 370, 372 n.2 (Pa. Super. 1980). Beyond that difficulty, our Supreme Court has held that involuntary commitment implicates reputational interests protected by the Pennsylvania Constitution. *See Wolfe v. Beal*, 384 A.2d 1187, 1189 (Pa. 1978) ("[A] person who has been unlawfully committed to a state mental hospital has a right to the destruction of the hospital records which were created . . . . The continued existence of the hospital records pose[s] a threat to [Wolfe]'s reputation."). Accordingly, the need to maintain "appellate vigilance" over this constitutional right implicates an important policy beyond Nikonowicz's interest in the litigation. *See Shearer*, 177 A.3d at 859 (distinguishing, for purposes of assessing whether a right involves an issue deeply rooted in public policy, constitutional rights from mere rule-based rights). Relatedly, we conclude that "the interests that would go unprotected without immediate appeal are significant relative to the efficiency interests served by the final order rule." *Williams*, 86 A.3d at 782.

- 10 -

The final prong is whether the claim will irreparably be lost if review is postponed until final judgment. A criminal defendant wishing to appeal a determination that he or she is competent to proceed to trial does not satisfy the criteria for an appeal as of right, because the defendant is free to challenge the "determination of competence following trial." ***Commonwealth v. Reagan***, 479 A.2d 621, 622 (Pa. Super. 1984). ***See also Commonwealth v. Tizer***, 684 A.2d 597, 601 (Pa. Super. 1996) (reviewing on direct appeal claim that "the trial court erred by deeming him competent to stand trial"). It stands to reason that this claim could be raised on direct appeal if the case had proceeded to final judgment.

Nikonowicz argues that his claims will be irreparably lost if deferred to final review because "the question of whether [he] was deemed incompetent and committed in violation of his due process rights will never be definitively answered." Appellant's Brief, at 3. We disagree. In cases that proceed to final judgment, resolution will be significantly delayed but could still be reviewed on appeal. Furthermore, as the Commonwealth highlights, these claims were lost by its decision to terminate prosecution. A defendant's claims are definitionally "irreparably lost" any time a case is resolved without a conviction.

However, the reputational interest involved here is unique and implicates interests beyond the criminal matter. The fact that Nikonowicz faced criminal charges is distinct from the commitment issue. Indeed, the procedures under Chapter 15 of the MHPA are civil in nature. ***See*** 50 P.S. §

- 11 -

7401(a) ("Whenever a person who is charged with crime, or who is undergoing sentence, is or becomes severely mentally disabled, proceedings may be instituted for examination and treatment under the civil provisions of this act in the same manner as if he were not so charged or sentenced."). Commitment proceedings "were never meant to supplant the operation of the criminal system, but were structured as completely collateral proceedings which could exist contemporaneously with criminal prosecution." *Commonwealth v. Davis*, 479 A.2d 1041, 1047 (Pa. Super. 1984), *aff'd*, 510 A.2d 722 (Pa. 1986).  We deem that point dispositive because it appears that, as a practical matter, an immediate appeal may be the only way to guarantee that a defendant's reputational interest is protected when he is involuntarily committed while facing criminal charges.[3]

Presently, the parties have not addressed the availability of another mechanism to appeal the sufficiency of the evidence justifying the incompetency finding or the associated procedural claims raised by Nikonowicz.  As previously noted, the applicable sections of the MHPA do not supply a right to judicial review, and we have not found any case addressing this issue.  Typically, appellate review of involuntary commitments takes the form of a direct appeal from a pure civil commitment or from petitions to expunge records in connection with requests to obtain firearms as specifically

---

[3] The fact that Nikonowicz's charges were dismissed following the appeal illustrates the conundrum.  However, our analysis would not have differed if the prosecution remained ongoing.

authorized by statute. **See** 18 Pa.C.S.A. § 6111.1(g)(2) (allowing persons involuntary committed by physician pursuant to 50 P.S. § 7302 to seek review of sufficiency of evidence supporting commitment and expungement). As Nikonowicz was committed under section 402, that statute does not apply.

Our Supreme Court's decision in **In re J.M.Y.**, 218 A.3d 404 (Pa. 2019), suggests that Nikonowicz would have forfeited appellate review absent this appeal. There, J.M.Y. was committed for involuntary treatment by a physician pursuant to 50 P.S. § 7302 on September 22, 2012, after he attempted to harm himself. Such commitments are valid for a maximum of 120 hours. His attending psychiatrist applied to extend the commitment for twenty days, as authorized by 50 P.S. § 7303(a). On November 24, 2014, J.M.Y. filed a petition to vacate the commitment and expunge all records, raising various due process challenges to the procedures resulting in his commitment. Ultimately, our Supreme Court concluded that the trial court lacked jurisdiction to entertain the petition. The Court observed that J.M.Y.'s continued commitment required the certification of a mental health officer. Notably, section 303 permits judicial review of the hearing officer's certification.

> (g) Petition to Common Pleas Court.--In all cases in which the hearing was conducted by a mental health review officer, a person made subject to treatment pursuant to this section shall have the right to petition the court of common pleas for review of the certification. A hearing shall be held within 72 hours after the petition is filed unless a continuance is requested by the person's counsel. The hearing shall include a review of the certification and such evidence as the court may receive or require. If the court determines that further involuntary treatment is necessary and

- 13 -

that the procedures prescribed by this act have been followed, it shall deny the petition. Otherwise, the person shall be discharged.

50 P.S. § 7303(g).

J.M.Y. did not challenge the certification under that procedure and, thus, could not file an appeal to this Court. *See also In re Ryan*, 784 A.2d 803, 807 (Pa. Super. 2001) (addressing appeal from trial court's review under 50 P.S. § 7303(g)). The *J.M.Y.* Court observed that J.M.Y. "seem[ed] to be arguing that, because he is raising due process challenges to his [s]ection 303 commitment procedure, such challenges may be brought at any time, and in the manner he chose. We reject such a notion." *Id.* at 417.

*J.M.Y.* does not address the commitment procedures involved in this appeal, but we are unaware of any statute that would permit a challenge to the trial court's decision at some later date. Accordingly, in the absence of any overriding statutory language, the default appellate provisions of the Judicial Code presumably apply. *See* 42 Pa.C.S.A. § 5571(b) ("an appeal from a tribunal or other government unit to a court . . . must be commenced within 30 days after the entry of the order from which the appeal is taken"). As an immediate appeal is the only way to guarantee that Nikonowicz can appeal the commitment order to vindicate his reputational interests, we find that the third prong is met as well. *Cf. Commonwealth v. Schultz*, 133 A.3d 294, 310 (Pa. Super. 2016) (concluding claim would be irreparably lost if review were postponed until trial "in light of the privilege issues in play and because **there is no effective mechanism**" for raising the claim on direct appeal) (emphasis added).

Having concluded that the order is appealable under Rule 313, we readily dispose of the Commonwealth's argument that this appeal is moot. As set forth by our Supreme Court in **Wolfe**, a committed individual has a reputational interest that extends beyond the period of commitment.

We now proceed to the issues raised on appeal. The first issue raises two separate procedural claims concerning Nikonowicz's commitment. For the following reasons, we agree that the trial court's failure to hold the hearing within the mandated period requires reversal. Accordingly, we need not reach the remaining issue.[4]

The key provision is set forth within section 402: "The determination of the competency of a person who is detained under a criminal charge shall be rendered by the court within 20 days after the receipt of the report of examination **unless the hearing was continued at the person's request**." 50 P.S. § 7402(g) (emphasis added). The trial court and Commonwealth agree that this provision was violated because the report was completed on

_____

[4] Nikonowicz argues that there was no authority for Dr. Gramatges to conduct the August 1, 2023 interview, as it was apparently prompted by a magisterial district judge's recommendation in connection with his/her bail determination. The Commonwealth responds that this was merely a psychological evaluation and not an incompetency examination. The Commonwealth's argument overlooks that its petition directly sought involuntary commitment, not an incompetency examination. **But see** 50 P.S. § 7402(c) ("Application to the court for an order directing an incompetency examination may be presented by an attorney for the Commonwealth[.]"). We decline to address this argument, as we conclude Nikonowicz is entitled to relief in any event. Furthermore, it is not clear whether Nikonowicz preserved an objection. The remaining claim argues that the evidence presented was insufficient to establish that he was incompetent.

August 4, 2023, and the hearing took place more than one month later. However, both suggest that Nikonowicz waived any complaint by requesting a postponement.

We respectfully disagree. The competency hearing was initially scheduled for August 22, 2023, which was within twenty days of the August 4, 2023, report. At the August 22 hearing, Nikonowicz argued that the trial court could not grant the petition since Dr. Gramatges was not present. The trial court then *sua sponte* rescheduled the hearing. In its opinion, the trial court states that it "continued the hearing . . . based on defense counsel's objection[.]" Trial Court Opinion, 12/14/23, at 7.

We do not agree that Nikonowicz requested that the hearing be rescheduled. His objection merely argued that the Commonwealth's failure to secure Dr. Gramatges' appearance precluded the trial court from committing him. The trial court did not have to accept this argument.[5] Thus, while it is correct that Nikonowicz objected, in context that objection was to the sufficiency of the evidence. The trial court was free to disagree with the argument. Alternatively, the court could have ordered another evaluation. Indeed, at the rescheduled commitment hearing, Nikonowicz reiterated his procedural objection and argued that the trial court could remedy the violation by ordering a new examination. He cited 50 P.S. § 7402(g) and stated, "We have objected to this from the beginning. . . . . Now as far as the remedy for

---

[5]  The Commonwealth argued, "You can make a finding that he is not competent based on his presentation today." N.T. Hearing, 8/22/23, at 7.

- 16 -

that. I think the only remedy is likely another evaluation," followed by a hearing within twenty days from the report. N.T. Competency Hearing, 9/12/23, at 41.[6]

We now address whether this procedural violation was fatal. As with the collateral order analysis, we have not found any authority directly on point. In *In re A.J.N.*, 144 A.3d 130 (Pa. Super. 2016), we aptly summarized the caselaw emphasizing the importance of strict compliance with other procedural sections of the MHPA:

> Our decision in *In re Chiumento*, [] 688 A.2d 217 ([Pa. Super.] 1997), likewise addressed the scenario where the specific due process protections provided to a person under MHPA were ignored. We stated, "[b]ecause the specific procedural protections and mandates delineated in the MHPA were not followed," the involuntary commitment in question was improper, the appellant had to be discharged, and the record of the involuntary commitment had to expunged. *Id.* at 218. We concluded that a mental health patient's need for treatment cannot trump compliance with the due process requirements outlined in the MHPA, even when the due process violation appears to be minimal. *See Commonwealth v. C.B.*, [] 452 A.2d 1372 ([Pa. Super.] 1982) (C.B. was not given a copy of a petition three days in advance of hearing held pursuant to § 7304 (relating to court-ordered involuntary treatment not to exceed ninety days), as required by MHPA; C.B. was entitled to expungement of all records of commitment). *See also In re Condry*, [] 450 A.2d 136, 137 ([Pa. Super.] 1982) (vacating an order that upheld an involuntary commitment because "the statutory requirements [of the MHPA] were not strictly adhered to"); *Cf. In re J.M.*, [] 726 A.2d 1041 ([Pa.] 1999) (holding proceedings valid where county

_____

[6] Nikonowicz argued that a reexamination was particularly appropriate because his condition had improved. In fact, on cross-examination, Dr. Gramatges agreed that Nikonowicz "is doing a lot better today." N.T. Competency Examination, 9/12/23, at 24.

- 17 -

administrator issued warrant before person was taken to facility for involuntary treatment and where warrant supported the finding that there was a reasonable probability that patient was in need of emergency involuntary commitment under [section] 302). Thus, the case law uniformly mandates expungement and destruction of records when the procedural, due process requirements of the MHPA are violated during a commitment proceeding.

*Id.* at 138–39.

We see no reason not to extend this same logic to the violation here.[7]

The General Assembly mandated that the incompetency determination be

---

[7] On this basis, alone, we conclude that Nikonowicz is entitled to relief. However, we are compelled to note that it appears Nikonowicz's commitment was unlawfully extended.

The trial court committed Nikonowicz to Norristown State Hospital on September 13, 2023, for 60 days, which, as previously noted, is the maximum period allowed by statute. The docket reflects that Nikonowicz was transported from Norristown to the county jail on January 26, 2024, which is 135 days from September 13, 2023. Accepting *arguendo* that additional periods of involuntary treatment are authorized without resort to 50 P.S. § 7406, there is no indication on the public docket that any party sought to extend the commitment. In this regard, section 7406 separately permits, after a finding of incompetency under section 7403, an order directing involuntary treatment under 50 P.S. § 7304. Again, nothing indicates that this statute was invoked.

Finally, section 7403 requires a reexamination of any person deemed incompetent "not less than every 90 days by a psychiatrist appointed by the court[.]" 50 P.S. § 7403. It appears that the only review of Nikonowicz's commitment was sometime around February 15, 2024, when the trial court ordered a competency evaluation, followed by the March 13, 2024 order deeming Nikonowicz competent to proceed.

We believe that the Commonwealth and the trial court acted in good faith. However, the restraints on Nikonowicz's liberty are significant and we remind

*(Footnote Continued Next Page)*

- 18 -

made within twenty days of receipt of the report unless Nikonowicz requested a postponement. Because he did not, the trial court violated his procedural rights. Nikonowicz is, thus, entitled to expungement of all records since his commitment was unlawful. *Id.*

Order reversed. Nikonowicz's September 12, 2023, involuntary commitment is to be expunged and all records of that commitment are to be destroyed upon remand. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/28/2025

---

the parties and the trial court of the need to strictly follow the General Assembly's statutory directives.